WALTER A. ROBBINS, administrator, *vs.* ATHOL GAS AND
ELECTRIC COMPANY.

SAME *vs.* MINUTE TAPIOCA COMPANY.

Franklin.  September 22, 1920. — October 19, 1920.

Present: RUGG, C. J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Negligence,* Causing death, Trespasser. *Wanton and Reckless. Misconduct.*
*Evidence,* Competency, Opinion: expert.

If a boy, who, without any knowledge on the part of or invitation from the pro-
prietor, approached a factory by the main driveway leading to it, went around it
to the rear, proceeded there by a grassed-over path toward its boiler room to pro-
cure empty spools such as a previous occupant of the factory had given to him,
and, seeing some electric transformers standing twenty inches above the ground
a few feet from the path with wires running therefrom to the factory, went to
them and, seizing a wire, is killed by reason of the high voltage of the electricity,
there can be no recovery under St. 1907, c. 375, either in an action against the
proprietor of the factory or in an action against an electric company which
owned, controlled and maintained the transformers and wires, unless it be shown
that the boy's death was caused by wilful, wanton or reckless misconduct on
the part of the defendant, the boy being a trespasser when he was killed.

At the trial together of the actions above described, there was evidence tending
to show that the proprietor of the factory, less than three months previous to
the accident, had authorized the electric company to place the transformers and
wires on the factory grounds at some convenient place and had permitted them
to remain there, where they still were owned and controlled by the electric com-
pany, that he had been informed of a break in the insulation of a wire and
immediately had notified the electric company, and that the electric company
had not remedied the break.  There was no evidence warranting a finding that
either defendant had any reason to anticipate that the boy would approach the
dangerous transformer, much less put his hand upon the wires, and it appeared
that he had not taken hold of the wire where the insulation was broken. *Held,*
that, while in the light of the accident it seems that the apparatus might well
have been enclosed or otherwise guarded, the evidence did not warrant a finding
that either defendant had been guilty of wilful, wanton or reckless misconduct
which had caused the boy's death.

St. 1907, c. 375, amending R. L. c. 171, § 2, so that the liability, thereby consti-
tuted, of a person' or corporation for the causing of death by his or its agents or
servants is based upon their negligence instead of upon their gross negligence,
did not undertake to create a lower standard of duty where a penalty is
sought under the statute because the injury results in death than that which
exists  at common law when the injured person survives.

Testimony, at the trial of the actions above described, of a companion of the boy
who was killed, "I told him [immediately before the accident] not to touch it
[the wires] and he said he was not afraid," was *held* to have been competent to

prove that the plaintiff's intestate was aware of the danger of his action and was not in the exercise of due care when killed.

At the trial of the actions above described, after all the facts with reference to the transformers, wires and voltage had been placed before the jury, an expert called by the plaintiff was asked, whether in his opinion "that whole thing is safe or unsafe," the plaintiff expecting an opinion as to the danger of leaving the apparatus unenclosed. The testimony was excluded. *Held,* that the exclusion was proper, the subject matter being one to be determined by the jury and not one upon which the opinion of an expert was competent.

TWO ACTIONS OF TORT, each with a declaration in two counts, alleging that the defendant therein had caused the death of the plaintiff's intestate, negligence in permitting the transformer and its wires, described in the opinion, to become defective and in a dangerous condition being charged in the first count in each declaration, and "wilful, wanton and reckless negligence" being alleged in the second count. Writs dated March 3, 1919.

In the Superior Court, the actions were tried together before *Sisk,* J. The material evidence is described in the opinion. At the close of the evidence, a motion of the defendant that a verdict be ordered in its favor was allowed in each action and a verdict was returned accordingly. The plaintiff alleged exceptions.

*W. A. Davenport,* (*C. Fairhurst* with him,) for the plaintiff.

*J. B. Ely,* for the defendant Athol Gas and Electric Company.

*R. H. Oveson,* for the defendant Minute Tapioca Company, submitted a brief.

DE COURCY, J. These two actions, tried together, were brought to recover damages for the death of the plaintiff's son, Lewis H. Robbins, who received an electric shock from a highly charged transformer wire owned by the electric company and located on land of the tapioca company. In each case the main question is whether there was evidence of a breach of legal duty on the part of the defendant entitling the plaintiff to go to the jury.

The property of the tapioca company was on the north side of East Main Street in Orange. A main driveway extended from the street along the easterly side of the factory buildings. On the westerly side of the buildings, on the land of the company, there was a path or passageway which was grassed over except where ruts were made by the company's trucks in carrying coal to its bins. Members of a gun club, and owners of land to the north, sometimes made use of this way, especially before the property was acquired by the tapioca company. In July, 1918, the electric

company, under a contract to supply power to the factory, placed three of its transformers on land of the tapioca company a few feet west of said way, and erected poles between them and the way. The transformers were about three feet high and rested upon a platform twenty inches above the ground. The primary wires entering them carried a voltage of about twenty-three hundred volts; the secondary wires, which ran to the nearest building, carried a voltage of one hundred and ten and two hundred and twenty volts. The insulation was the ordinary triple braid kind used for outside construction. There was evidence that the insulation was off at one place. Apparently this was not where the accident happened; but that is not controlling, in view of the testimony of the plaintiff's expert, that the intestate would receive the shock at any other part.

The story of the accident was told by the Bristol boy, who was with the intestate, Lewis H. Robbins, at the time. It appears that before the tapioca company took the factory in 1918, the boys had sometimes secured empty spools from the previous occupant, a shoe company. On the afternoon of September 21, 1918, they left Bristol's house east of the factory, purposing to get some spools at the boiler room; they went around the rear of the factory, and then along the path on the westerly side, to a point opposite the transformers. Bristol remained in the middle of the path. The Robbins boy, although warned by his companion not to touch the transformers, reached his hand up over his head, took hold of a wire, and was instantly killed.

On the evidence it is clear that the intestate had no invitation, express or implied, from either of the defendants to go to the place where he was injured. Even when on the driveway he was at most a licensee, and must be regarded as a trespasser when he left the way and approached the transformers. The only legal duty that the defendants owed to him, either as licensee or as trespasser, was to abstain from any wilful, wanton or reckless conduct that was likely to injure him. They were not obliged to keep the premises safe for his use, or to warn him of the dangerous character of the mechanism obviously maintained thereon. *Daniels* v. *New York & New England Railroad,* 154 Mass. 349. *Hector* v. *Boston Electric Light Co.* 161 Mass. 558. *Hillman* v. *Boston Elevated Railway,* 207 Mass. 478, 483. *Romana* v. *Boston*

*Elevated Railway,* 218 Mass. 76, 82, and cases cited.  *Graham* v. *Pocasset Manuf. Co.* 220 Mass. 195.  Something more than gross negligence on their part was required in order to make them liable. *Altman* v. *Aronson,* 231 Mass. 588, 592.

The evidence would not warrant a finding that either defendant was guilty of a wilful and intentional wrong, or of such reckless disregard of probable consequences as is equivalent thereto. *Dean* v. *Boston Elevated Railway,* 217 Mass. 495, 498.  The only evidence against the tapioca company was that its officers, less than three months previous to the accident, authorized the electric company to place the transformers and wires on their land at some convenient place, and permitted the apparatus to remain there; that when they were informed about the exposed wire, they immediately notified the electric company, which owned, located and controlled it.  It does not appear that they had any reason to anticipate that the intestate would approach this dangerous transformer, much less put his hand upon the wires.  During their occupancy he had never come upon their premises for spools, and none were there.  The same is true also of the electric company. The transformer was not defective; and the exposed wire to which its attention was called does not appear to have caused the injury. Both were on private land, and there is no evidence that this company knew or should have known that children ever trespassed in the vicinity.  While in the light of the accident it seems that the apparatus might well have been enclosed or otherwise guarded, the failure to do so was not a breach of any legal duty owed the intestate by either of the defendants.  In *Romana* v. *Boston Elevated Railway,* 218 Mass. 76; *S. C.* 226 Mass. 532, relied on by the plaintiff, there was evidence that for several years a trolley pole was allowed to remain dangerously electrified by reason of defective insulation, and that the defendant was chargeable with what its employee, Sullivan, knew, namely, that many persons as licensees were using the path near the pole, where the plaintiff was at the time of the accident, and would be likely to suffer grievous bodily injury.  In *Boutlier* v. *Malden,* 226 Mass. 479, it could be found that the plaintiff was a traveller upon the highway; and that the broken wire and the high tension wire from which it was charged were located without legal authority and were maintained in a defective and dangerous condition.

The plaintiff's contention, based upon the language of the "death statute," that he need establish only ordinary negligence on the first count, cannot prevail. At common law there was no recovery of damages for loss of life. The history of the legislation giving a remedy for death is traced in *Hudson v. Lynn & Boston Railroad*, 185 Mass. 510, and *Brooks v. Fitchburg & Leominster Street Railway*, 200 Mass. 8, and need not be repeated. The statute (St. 1907, c. 375) provides: "If a person or corporation by his or its negligence, or by the negligence of his or its agents or servants while engaged in his or its business, causes the death of a person who is in the exercise of due care and not in his or its employment or service, he or it shall be liable in damages," etc. This statute struck out the requirement of "gross" negligence on the part of the wrongdoer's "agents or servants," which is contained in the earlier legislation. But it did not undertake thereby to create a lower standard of duty in death cases than that existing where only damages for conscious suffering are sought; in other words, to give damages as a penalty where the injury results in death, while denying compensation where the injured person survives. As was said in *Bergeron v. Forest*, 233 Mass. 392, 399, "Negligence consists in doing or omitting to do an act in violation of a legal duty or obligation due to the person sustaining injury." As already stated, that legal duty, in the case of a trespasser, is to abstain from wilful, wanton or reckless conduct which is likely to injure him.

The exceptions relating to evidence call for brief notice. The testimony of what the Bristol boy said to the intestate immediately before the accident, "I told him not to touch it and he said he wa'n't afraid," was competent to prove that the intestate was aware of the danger and was not using due care. *Fitzpatrick v. Fitchburg Railroad*, 128 Mass. 13. No request was made to strike out the last part as not responsive. We find no error in excluding the question to the expert, whether, in his opinion, "that whole thing is safe or unsafe?" The question sought an opinion as to the danger of leaving the apparatus unenclosed. All the facts with reference to the transformers, wires and voltage of the electric current were before the jury. Whether the arrangement was safe for persons in its vicinity could be judged by the ordinary man in the light of common experience, and did not call for expert opinion. *Reed v. Edison Electric Illuminating Co.* 225 Mass. 163, 167.

Other exceptions to evidence are not argued, and we treat them as waived.

In view of the conclusion that there was no evidence to warrant a finding of breach of legal duty on the part of either defendant, it is unnecessary to consider the issue of the intestate's due care.

*Exceptions overruled.*