VELMA F. EVANS *vs.* BOSTON, REVERE BEACH AND LYNN RAILROAD COMPANY.

CHARLES H. EVANS *vs.* SAME.

Middlesex.   May 17, 1933. — February 14, 1934.

Present: PIERCE, WAIT, FIELD, & LUMMUS, JJ.

*Negligence,* Railroad, Trespasser, Invited person. *Way,* Private. *Trespass.*

The station building at a railroad station had an entrance only at its southwest corner, and passengers entering there passed inside the station through a cash-taking turnstile, then from the easterly side of the station to loading platforms for trains running north and south. Other entrances to the platform or track area were blocked by fences and, at the south of the loading area, by a device extending across the entire roadbed and composed of pointed prongs set close together. A public way ended just east of the easterly track, where there was a rail fence in which there was a gap partly obstructed by posts, and the public were permitted to pass from the way through the gap across the tracks of the railroad south of the line of the pointed prongs. A woman, approaching on such way in the night time from the east and intending to take a train bound north and already standing in the station, finding it impossible directly to enter the platform area from the east, went through the gap in the fence and attempted to pass from the south over the prongs, fell and was injured, and then,

arising, entered the standing train where her fare was collected by a guard, who had no knowledge of her injury. A sign, which she did not read, gave warning that the passage through the gap in the fence and across the tracks was private and was to be used at the user's risk. In an action by her against the railroad corporation for such injury, a verdict was ordered for the defendant. *Held,* that

(1) Leaving open the passage from the end of the public way across its location did not constitute an invitation by the defendant to the plaintiff to use the entrance to the platform area over the prongs;

(2) The plaintiff was a trespasser when she passed over the prongs;

(3) The circumstance, that the plaintiff subsequently became a passenger of the defendant, was immaterial;

(4) The verdict properly was ordered.

Two ACTIONS OF TORT, one by a woman for personal injuries alleged to have been sustained as described in the opinion, and the second by her husband for consequential damages. Writs dated January 2, 1930.

In the Superior Court, the actions were tried together before *Morton,* J. Material evidence is described in the opinion. The judge ordered verdicts for the defendant and reported the actions for determination by this court.

*C. C. Steadman,* for the plaintiffs.

*L. Wheeler, Jr.,* for the defendant.

WAIT, J. The female plaintiff tripped and fell on the location of the defendant's railroad in or near its station at Winthrop Centre late in the evening of May 20, 1929. The tracks at the station run approximately north and south, Boston bound trains using the eastern, Lynn bound the western, track. Jefferson Street comes to a dead end at the eastern line of the location substantially opposite the station waiting room which stands west of the tracks. The northern sidewalk of Jefferson Street is closed by a turnstile gate from the station platform, which precludes entrance. A woven wire fence blocks the northern half of Jefferson Street. A rail fence blocks the southern half. A gap in this rail fence, partly obstructed by posts where the southern sidewalk at Jefferson Street abuts on the railroad location, permits travellers to enter upon the railroad location and follow a well worn private way across the location to the southeast corner of the station waiting room. A prominent sign gives warning that the way is private

and is used at the user's risk. Parallel with this private way, at a distance to the north not stated but from scale of a plan shown us not over three feet, there is laid across the location from the fence on the eastern to a fence on the western side what the witnesses called a "cattle guard." This strip, about eight feet wide, is made up of metal bands bearing prongs extending upward two inches and "set together just about as close as you can put them," two or three inches apart at their points. The station loading spaces for trains begin to the north of the "guards." In these spaces and in the private way the surface is level with the tops of the rails. In the "guards" there is no such grading. The course of business of the defendant is to require all passengers to enter at doors at the southwest corner of the station building, and pass through cash-taking turnstiles in the waiting room inside the station, and thence pass from the station building to the loading platforms of the station. A jury could find that the "cattle guard" is the method used to bar entrance along the roadbed. This eight-foot bed of spearheads is a horizontal fence allowing trains to pass over freely but discouraging other crossing.

On the night in question a Boston bound train stood on the eastern track with its last car somewhat beyond and to the north of the "cattle guard." Car gates were open on both sides. The plaintiff, hurrying and sometimes running down the northern sidewalk of Jefferson Street, eager to catch the Boston train, found herself unable to enter by the "exit" turnstile; she followed the fences around to her left to the posts at the private way; saw, but did not stay to read, the sign or signs there; pushed on to the private way, and then turned sharply to the north along the eastern tracks; stepped upon the "cattle guard," tripped and was hurt. She entered the waiting train from a door on the right of the car platform. A fare was accepted in this car by a guard who knew nothing of her mishap. Some years before she had lived in Winthrop and was familiar with the station. At that time Jefferson Street was not blocked by the fences, and the defendant did not use a pay-before-you-enter system at the station. She observed that the

private way was well worn and that the surface of the railroad roadbed to the north was darker colored. She did not know of the spearhead paving and in her haste did not look with great care at her footing.

The trial judge directed verdicts for the defendant. He reported the cases on the question whether the plaintiffs should have been allowed to go to the jury.

Without deciding whether the evidence required a finding that the female plaintiff contributed to her injury by her own lack·of due care, we think it insufficient to sustain verdicts for actionable negligence. The defendant owed a duty to those whom it invited upon its premises to exercise reasonable care to keep the premises reasonably safe and convenient for use in accord with the invitation, and to warn against hidden dangers. Obviously the "cattle guard" strip was not reasonably safe and convenient to walk upon; and, if hidden by darkness, or otherwise, required warning of its presence if within any space which people were invited to use.

The entire arrangement of the station premises, however (certainly in the daytime), precluded any invitation to enter upon the "cattle guard" space. Entrance upon the loading platform from Jefferson Street was blocked by fence and turnstile. Use of the passageway across the tracks was declared by the sign to be at the user's risk. Leaving it open did not constitute an invitation to use it. *Bowler* v. *Pacific Mills*, 200 Mass. 364. *Hillman* v. *Boston Elevated Railway*, 207 Mass. 478, 483. No invitation was extended to intending passengers or others to enter upon the loading platform in the method used by the female plaintiff. The "cattle guard" was an open and obvious barrier to entry along the roadbed from the private way.

Nor do we think the invitation changed with the passing of daylight, and the presence of a waiting train on the eastern track. All persons were warned by the turnstile, permitting exit only from the eastern platform to Jefferson Street, that entrance from that side was not invited. The private way contained no invitation. No one was entitled to further warning to keep out, and not to enter from Jef-

ferson Street to that side of the tracks. The female plaintiff was a trespasser at the time she was hurt. That she subsequently became a passenger is immaterial.

The case differs essentially from *Kovarik* v. *Long Island Railroad*, 189 App. Div. (N. Y.) 534, cited by the plaintiff. Here there was no concealment by snow, and there was warning that the platform was not to be entered from the Jefferson Street side.

We attach no importance to the statutory requirement of "cattle guards" to keep cattle from a railroad location; for we think these strips were not intended as compliance with the statute, but could be found to be a reasonable method of repelling entrance to the loading platform along the roadbed.

A different question would be presented had the female plaintiff been a passenger alighting from a train and seeking exit. Compare *Cazneau* v. *Fitchburg Railroad*, 161 Mass. 355.

In principle the case is controlled by *Kelley* v. *Boston, Revere Beach & Lynn Railroad*, 278 Mass. 469. The judge was right, and in accord with the stipulation of the report the order in each case is

*Judgment for the defendant.*