PETER SARNA, administrator, *vs.* AMERICAN BOSCH MAGNETO CORPORATION.

JULIA SWIATEK, administratrix, *vs.* SAME.

Hampden.    January 4, 1935. — April 1, 1935.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Negligence,* Dangerous article, Of one owning or controlling real estate, Licensee, Contributory. *Proximate Cause. Corporation,* Officers and agents. *Agency,* Knowledge of agent.

A finding that the defendant was negligent was warranted at the trial of an action for the death of one toward whom the defendant was under the duty of exercising due care, on evidence that the decedent was killed at the bottom of a deep ravine by inhaling hydrogen sulphide gas, which is very poisonous and, being heavier than air, tends to form a blanket over the ground in such a place; that the gas escaped from an old steel tank which, after being on the defendant's premises for some years, he had dumped and abandoned with other refuse in the ravine a few days before the decedent's death; that the gas was

highly compressed in the tank, which was badly corroded and slightly cracked; and that the defendant knew of the dangerous nature of the gas and knew that the place where the tank was left was frequented by people who would examine it and perhaps attempt to salvage it.

To establish knowledge by a corporation of certain facts, it is not necessary to show that some one of its agents knows all of such facts: a corporation is chargeable with the combined knowledge which all its agents acquire within the scope of their authority.

A finding was warranted that there was a causal connection between negligence of one in leaving an old steel tank filled with poisonous gas on a dump, which to his knowledge was frequented by people seeking to salvage old metals, and the death of such a person resulting from his inhaling the gas after it had escaped from the tank, even if its escape was due to something which the decedent did to the tank.

Where, at the trial of an action for death resulting from the decedent's inhaling a poisonous gas which escaped from a container left by the defendant on a dump, there was no evidence as to what the decedent was doing at the time he was overcome by the gas at the dump, the question whether he was guilty of contributory negligence was for the jury; the plaintiff was entitled to the full benefit of G. L. (Ter. Ed.) c. 231, § 85.

One, to whom a landowner gave permission to dump refuse on his land, which was beneficial to the owner in filling the land, was under a duty to another, who was a mere licensee on the land, to exercise due care to prevent injury resulting to him from the refuse dumped and abandoned pursuant to such permission.

Two ACTIONS OF TORT, the first for conscious suffering and the death of Walter Swiatek and the second for conscious suffering and the death of Joseph Swiatek. Writs dated February 12, 1931.

The actions were tried together in the Superior Court before *Broadhurst,* J. Material evidence is stated in the opinion. In each action, the judge ordered a verdict for the defendant except on one count for conscious suffering and one count for death. There were verdicts for the defendant on such counts for conscious suffering, and for the plaintiffs on such counts for death in the sums of $5,655 and $6,220, respectively. Both parties alleged exceptions in each action.

The cases were submitted on briefs.

*E. W. Sawyer & R. S. Spooner,* for the defendant.

*D. H. Keedy, E. S. Searle, & S. W. Weltman,* for the plaintiffs.

QUA, J.    As these actions now stand, each plaintiff seeks to recover for the death of his intestate alleged to have been caused by negligence of the defendant.    Joseph Swiatek was the father of Walter Swiatek.    There was ample evidence from which it could have been found that both intestates were killed at approximately the same moment by inhalation of hydrogen sulphide gas at or near the bottom of a deep ravine with precipitous sides located three hundred feet or more in the rear of the house where they lived.    From the position of the bodies, the defendant contended that death occurred while the deceased persons were on land of one Lemieux.    The defendant cannot be harmed if we assume that such was the fact as to both father and son.    It could have been found that the gas came from an old steel tank which some days before the accident had been dumped by the defendant with other refuse from its plant down the steep side of the ravine and which had eventually found its way to the bottom, where it was observed immediately after the accident with the brass valve freshly broken off.    The jury found for the plaintiff in each case.

1. There was evidence of the defendant's negligence, part of which may be summarized as follows:  Hydrogen sulphide is exceedingly poisonous, even when diluted to less than one part of gas to a thousand parts of air.    It can be smelled in dilutions of less than one part to a million.    It can, if suddenly released, cause death in the open air, where, being heavier than air, it tends to form a blanket over the ground, especially at the bottom of a ravine.    It is under high pressure in the tank and escapes quickly if an opening is made.    About five years before the accident the defendant had used hydrogen sulphide in some experiments conducted by its chemist at its plant.    The gas had come in one or more tanks similar to that dumped into the ravine.    According to one witness, this particular tank had been in the defendant's yard for "several years."    It was in the place used for scrap iron and steel.    It was badly corroded and slightly cracked and looked as if it had leaked and then corroded over.    It had emitted a bad odor for some time before the defendant's foreman ordered it removed to a dump.    The

defendant's employee who dumped the tank and selected the place where it should be put knew that there were people about the dump and that they would examine the tank, "paw it over" and perhaps attempt to salvage and use it. In view of the highly dangerous character of the contents of the tank and of the knowledge which the jury could infer the defendant, through its chemist, had or ought to have had as to the nature of its contents, the condition of the tank itself and the likelihood that the highly compressed gas would be released at some time in some manner, the jury could say the defendant was negligent in not taking necessary steps to render the tank harmless before abandoning it in a place where it might have been anticipated that others would be injured or killed by it. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501. *Leahy* v. *Standard Oil Co. of New York*, 224 Mass. 352. *Goupiel* v. *Grand Trunk Railway*, 94 Vt. 337. *Juntti* v. *Oliver Iron Mining Co.* 119 Minn. 518. This case is analogous to that large number of cases in which a manufacturer placing an inherently dangerous article on the market without warning of its nature has been held liable to a remote purchaser. See, for example, *Thornhill* v. *Carpenter-Morton Co.* 220 Mass. 593; *Farley* v. *Edward E. Tower Co.* 271 Mass. 230. In principle it makes no difference whether the dangerous article is started on its way toward contact with the injured person by sale or by depositing it in some frequented spot.

It was not necessary for the plaintiffs to show that some one agent or employee of the defendant was cognizant of all the facts necessary to establish that he as an individual was negligent. The defendant is chargeable with the combined knowledge which all its agents acquired within the scope of their authority together with legitimate inferences from all the evidence. *Browning* v. *Fidelity Trust Co.* 250 Fed. Rep. 321, 324. *Alabama Power Co.* v. *McIntosh*, 219 Ala. 546. See *New England Trust Co.* v. *Bright*, 274 Mass. 407, 412.

2. What has just been said and the cases cited above go far to show that there was no error in allowing the jury to infer that there was a causal connection between negligence of the defendant and the deaths of the plaintiffs' intestates.

The broken valve was the only evidence of any intervening act of any third person, but if that shows that there was such act, even if it was the act of one of the deceased persons (see *Akin* v. *Bradley Engineering & Machinery Co.* 48 Wash. 97), it was only what might have been expected as a result of leaving the tank in a place where there was dumping and where numerous people came to salvage brass and other old metals. *Lane* v. *Atlantic Works*, 111 Mass. 136. *Leahy* v. *Standard Oil Co. of New York*, 224 Mass. 352. *Teasdale* v. *Beacon Oil Co.* 266 Mass. 25. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501. The case is distinguishable from cases like *Horan* v. *Watertown*, 217 Mass. 185, where it was held there was nothing to indicate the probability of injury, and from cases like *McGuiness* v. *Butler*, 159 Mass. 233, and *Falardeau* v. *Malden & Melrose Gas Light Co.* 275 Mass. 196, where the plaintiff was injured as a direct consequence of a trespass by himself against property of the defendant. At the time of the accident, the tank had ceased to be the defendant's property, because the defendant had abandoned it. *Welch* v. *McNeil*, 214 Mass. 402, 406. *Burroughs* v. *Pacific Telephone & Telegraph Co.* 109 Ore. 404. *Fidelity-Philadelphia Trust Co.* v. *Lehigh Valley Coal Co.* 294 Penn. St. 47, 55.

3. The question of contributory negligence on the part of the plaintiffs' intestates was for the jury. There was no evidence as to what they were doing at the time when they were overcome. The plaintiffs are entitled to the full benefit of G. L. (Ter. Ed.) c. 231, § 85, and the burden of proof rested upon the defendant to show negligence of the intestates by credible evidence.

4. The defendant contends that it owed no duty of due care to the plaintiffs' intestates, because the latter were at most only licensees on the land of Mrs. Lemieux and because, as the defendant says, it had been invited by Mrs. Lemieux to use her land as a dump for her benefit as well as for its benefit, so that it used the land under the right of the owner and owed no greater duty to licensees than the duty to refrain from wilful and wanton injury. This contention

is based upon evidence that Mrs. Lemieux's garage stood upon the brink of the ravine and that when the defendant's foreman asked her if the defendant might use her land for dumping, she said it was all right, that they might fill in back of the garage where the rain had washed out, "To fill in that ground, so that the garage would not tumble down." It is unnecessary to decide whether this would be enough to enlarge the rights of the defendant against the landowner from those of a mere licensee to those of a business visitor (see *Statkunas* v. *L. Promboim & Son Inc*. 274 Mass. 515), because in any event we perceive nothing in it which ought to absolve the defendant from the ordinary duty of due care toward the plaintiffs' intestates.  Mrs. Lemieux had neither by words nor implication given the defendant any right of possession or control over any part of her premises or made any contract with it or made it her agent, or given it any right to object to the presence of strangers on her land, unless they interfered with the process of dumping.  Except with reference to the single act of leaving refuse as filling in the place designated, she had conferred upon the defendant none of the privileges or immunities of ownership.  It is only for the purpose of securing the full and complete enjoyment of these rights that an owner is relieved from liability for negligence to a licensee or trespasser.  *Guinn* v. *Delaware & Atlantic Telephone Co*. 43 Vroom, 276, 278.  This case is not like the cases cited by the defendant such as *Blackstone* v. *Chelmsford Foundry Co*. 170 Mass. 321;  *Cole* v. *L. D. Willcutt & Sons Co*. 214 Mass. 453;  *Robbins* v. *Athol Gas & Electric Co*. 236 Mass. 387;  *McIntyre* v. *Converse*, 238 Mass. 592;  *Hafey* v. *Turners Falls Power & Electric Co*. 240 Mass. 155;  *Murphy* v. *Boston & Maine Railroad*, 248 Mass. 78; and *Gravelle* v. *New York, New Haven & Hartford Railroad*, 282 Mass. 262.  In each of those cases the landowner had invested the defendant with possession or control of some part of his land or buildings or had permitted him to erect or maintain structures or appliances, or to place his property, or to operate his engines thereon, and in each the plaintiff's injury was caused by contact with property owned or

controlled by the defendant. In this case the defendant had no property on the land at the time of the accident. It had allowed its tank to be used as filling for the Lemieux land. The deceased persons were not trespassers as to any rights of the defendant. See *Sughrue* v. *Booth,* 231 Mass. 538, at page 539; *O'Neil* v. *National Oil Co.* 231 Mass. 20, at page 27; *Guinn* v. *Delaware & Atlantic Telephone Co.* 43 Vroom, 276, 277–278, quoted in *Boutlier* v. *Malden,* 226 Mass. 479, 490. We need not consider whether it would make any difference if the plaintiffs' intestates had been trespassers as to Mrs. Lemieux, for there was evidence that there were paths in the ravine leading to the dump which persons living in the neighborhood were permitted to use without objection, and the jury under the instructions given, as we understand them, must have found that both father and son were licensees.

5. The defendant has argued that there was error in the refusal of certain of its requests for rulings. For the most part they are covered by what has been said. We think the judge did instruct the jury, as the defendant requested, that there could be no recovery in either case if the intestate was a trespasser on the Lemieux land. If this was not expressly stated as to the father's case, it was clearly implied from what was said. As a ruling of law it was at least sufficiently favorable to the defendant.

We have considered all exceptions which have been argued. We need not deal with the exceptions of the plaintiffs, as those were to be waived if the defendant's exceptions were overruled.

*Plaintiffs' exceptions waived.*
*Defendant's exceptions overruled.*