JOSEPH URBAN, administrator, *vs.* CENTRAL MASSACHU-
SETTS ELECTRIC COMPANY.

Hampshire. September 21, 1938. — December 2, 1938.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & RONAN, JJ.

*Negligence,* Invited person, Licensee, Electricity. *Evidence,* Relevancy. *Practice, Civil,* Amendment.

On the record, no action could be maintained for the death of a boy who, without right, in a playground where he was at the invitation of its owner, climbed to the top of a pole of an electric company that he had not been invited or induced to use and there came in contact with dangerous uninsulated high tension wires supplying electricity to the buildings of the owner of the playground.

A pole located on a playground, carrying high voltage wires, and having spikes therein for use as steps in climbing, did not constitute a dangerous instrumentality or situation placed in the path of a boy lawfully on the playground who would be likely to encounter it.

On the record of an action for death of a boy who was electrocuted when in a playground he climbed a pole carrying high voltage wires, there was no error in excluding evidence of previous use of the pole by other children on the playground.

No abuse of discretion was shown in the denial, at the close of the evidence at a trial, of a motion, presented at the beginning of the trial, to amend the declaration.

TORT.   Writ in the Superior Court dated December 3, 1935.

The action was tried before *T. J. Hammond*, J.

*J. T. Storrs*, for the plaintiff, submitted a brief.

*J. A. Anderson, Jr.*, for the defendant.

RONAN, J.   The intestate, who was twelve years of age, together with three other boys went to St. Mary's playground in Ware to play football.   While they were waiting for some other boys, the intestate climbed nearly to the top of a pole, which was located in the playground, for the purpose of seeing if they were coming.   He came in contact with two wires attached to a cross arm upon this pole and received a shock which caused his death.   The playground was set up and maintained for the use of the children of the parish of which the intestate was a member, and also for the children who attended St. Mary's school, located very near the playground.   The pastor of the church that owned the grounds had, at public services, invited the children to use this playground.

The defendant, since the establishment of the playground in 1927, had maintained this pole supporting the two wires, which were attached to the top cross arm and carried an electric current of a dangerous voltage.   Neither of these wires was insulated, but both were originally covered with a waterproofing substance to protect them from the weather. This covering had become frayed and rotten, leaving the wires exposed at various places.   The pole was twenty-five feet high.   Beginning at about two feet from the ground, the pole had spikes alternating on each side and about

eighteen inches apart, for use as steps in climbing the pole. The lower cross arm carried telephone wires.

There was evidence that this playground was located in a thickly settled district; that it was frequented by large numbers of children; that about one hundred fifty would play there each day; and that the pole was used, especially by the older children, to avoid being "tagged" as they were engaged in play.

The declaration was in two counts, the second for conscious suffering and the first for the death. It is agreed that there was no evidence of conscious suffering and we are not concerned with that count. A motion to amend the declaration by adding a count for the death on account of "wanton and wilful misconduct" of the defendant was presented to the court at the beginning of the trial. The judge held the motion in abeyance until the close of the plaintiff's evidence when, subject to the plaintiff's exceptions, he denied the motion and granted the defendant's motion for a directed verdict. The plaintiff also saved exceptions to the exclusion of evidence.

The jury, in adopting the view of the evidence most favorable to the plaintiff, could find that the intestate was lawfully and rightfully in the playground, upon the invitation of the owner, for the purpose of enjoying the premises in the manner and to the extent afforded by its facilities, and of playing games and indulging in such other forms of recreation as were usually and ordinarily undertaken by children in a place of this nature. There is, however, no evidence that would warrant a finding that any invitation, express or implied, had been extended to the intestate to climb to the top of this pole and to come in proximity to bare electric wires in order to ascertain if his playmates were on their way to the playground. The intestate was upon the pole for his own convenience. It had not been set up or maintained as an implement of play or as a part of the equipment of the playground. It was not designed for this use and, in fact, it was not being employed for this use by the intestate at the time of his death. Even as against the owner, the plaintiff would have no cause of

action based upon such use of this pole by the decedent. He was on a portion of the premises which were not suitable or adapted for play and he was utilizing the pole for a purpose for which it was never intended. *Eisenhauer* v. *Ceppi,* 238 Mass. 458. *Landers* v. *Brooks,* 258 Mass. 1. *Cerricola* v. *Darena,* 266 Mass. 267. *Wozniak's Case,* 299 Mass. 471. There was no invitation to use the pole as a vantage point to ascertain the approach of other children to these premises or for any other purpose. *Hector* v. *Boston Electric Light Co.* 161 Mass. 558. *Holbrook* v. *Aldrich,* 168 Mass. 15. *Guiney* v. *Union Ice Co.* 225 Mass. 279. *Scanlon* v. *United Cigar Stores Co.* 228 Mass. 481. *Coulombe* v. *Horne Coal Co.* 275 Mass. 226, 230. *Lally* v. *A. W. Perry, Inc.* 277 Mass. 463. *Herman* v. *Golden,* 298 Mass. 9. We, therefore, need not inquire if the boy's presence upon the pole was in the right, if any, of the owner of the playground. See *Boutlier* v. *Malden,* 226 Mass. 479, 490; *O'Neil* v. *National Oil Co.* 231 Mass. 20, 27; *Royal Indemnity Co.* v. *Pittsfield Electric Co.* 293 Mass. 4.

The wires which were supported by this pole supplied the rectory with light and power. It was a reasonable inference that the defendant owned and maintained the pole with the consent of the owner of the playground. These wires were located about twenty-five feet above the ground and at a safe distance for those whose activities were confined to the surface of the playground. *Royal Indemnity Co.* v. *Pittsfield Electric Co.* 293 Mass. 4, 6. The defendant offered no invitation or inducement to anyone using the playground to climb the pole. The intestate was upon the pole without any invitation of the owner. At most he was a licensee and stood in no better relation to the defendant, which had been authorized by the owner to erect and maintain the pole. *Murphy* v. *Boston & Maine Railroad,* 248 Mass. 78. *Mikaelian* v. *Palaza,* 300 Mass. 354. The arrangement of the spikes for the convenience of the defendant's employees in climbing the pole could not be construed as an invitation to strangers to go upon its property. *Bowler* v. *Pacific Mills,*

200 Mass. 364. *Evans* v. *Boston, Revere Beach & Lynn Railroad,* 285 Mass. 283. There was no obligation imposed upon the defendant to keep the wires, as then located, properly insulated and to maintain the cross arm in a reasonably safe condition for the use of children who frequented the playground. *Robbins* v. *Athol Gas & Electric Co.* 236 Mass. 387, 390. *Lynch* v. *Lowell Electric Light Corp.* 263 Mass. 81. Compare *Philbin* v. *Marlborough Electric Co.* 218 Mass. 394.

The presence of the intestate in the playground was not the cause of his death. The defendant's wires were not a source of danger to anyone in the playground. In order to receive an injury it was necessary to go nearly to the top of the pole and to come either in actual contact with the wires or at least within nine sixty-fourths of an inch from them. His death could be found to be the direct result of his unauthorized presence upon the pole, *Sullivan* v. *Boston & Albany Railroad,* 156 Mass. 378; *Barton* v. *Republican Co.* 277 Mass. 299; *Lanstein* v. *Acme White Lead & Color Works,* 285 Mass. 328; *Mikaelian* v. *Palaza,* 300 Mass. 354, even if we confine our attention solely to his mere presence upon the pole and ignore the evidence indicating that while there he committed a wrongful act in intermeddling with the wires, as "There were burns upon the deceased's hands at the junction of the palm and fingers extending to the bone." *McGuiness* v. *Butler,* 159 Mass. 233. *Gay* v. *Essex Electric Street Railway,* 159 Mass. 238. *Holbrook* v. *Aldrich,* 168 Mass. 15. *Robbins* v. *Athol Gas & Electric Co.* 236 Mass. 387, 389. *Falardeau* v. *Malden & Melrose Gas Light Co.* 275 Mass. 196.

The case at bar is not one where a defendant created a dangerous situation at a place to which he knew others had a right of access equal to his own; neither is it a case where a defendant placed a dangerous instrumentality in the path of another who would be likely to encounter it. *Sughrue* v. *Booth,* 231 Mass. 538. *Brosnan* v. *Gage,* 240 Mass. 113. *Sarna* v. *American Bosch Magneto Corp.* 290 Mass. 340. The failure of the defendant to exercise ordinary care to

see that the intestate was not injured while upon the pole did not constitute a breach of any duty owed by it to him and, consequently, the direction of a verdict for the defendant upon the first count of the declaration was free from error.

The judge was right in excluding evidence of the use of the pole by children previous to the accident. The circumstances attending the use of the pole at the time of the accident were fully disclosed by the evidence and the exclusion of testimony relating to its use upon other occasions was not prejudicial. *Plummer* v. *Dill*, 156 Mass. 426, 427. *Brosnan* v. *Koufman*, 294 Mass. 495, 500. *Novo* v. *Employers' Liability Assurance Corp. Ltd*. 295 Mass. 232, 234. The rulings excluding this evidence and also that tending to show that the wires were not properly insulated must be presumed to have been made upon the pleadings as they then stood. *Granara* v. *Jacobs*, 212 Mass. 271. *Ferris* v. *Boston & Maine Railroad*, 291 Mass. 529, 533.

The remaining exception is to the refusal of the judge to allow the plaintiff to amend his declaration. The allowance of an amendment predicated upon an erroneous finding of fact cannot be sustained, notwithstanding the terms of G. L. (Ter. Ed.) c. 231, § 138, that "The cause of action shall be considered to be the same for which the action was brought," *Church* v. *Boylston & Woodbury Cafe Co*. 218 Mass. 231, *Bowen* v. *Fairfield*, 260 Mass. 38, but G. L. (Ter. Ed.) c. 231, § 51, is not mandatory, and a judge is not required to grant every amendment that may be presented to him even if he is satisfied as to the identity of the cause of action. *Payson* v. *Macomber*, 3 Allen, 69, 70. The record does not show that the judge was required as matter of law to grant this motion. There is nothing to take the case out of the general rule that the denial of a motion to amend is discretionary. No abuse of discretion is shown. *Brooks* v. *Gregory*, 285 Mass. 197, 206. *Bucholz* v. *Green Bros. Co*. 290 Mass. 350, 354. *Smith* v. *Miles*, 296 Mass. 126, 129.

*Exceptions overruled.*