ALBION J. McPHETERS, SR., ADMINISTRATOR (ESTATE OF ALBION J. McPHETERS, JR.) *v.* JAMES LEE LOOMIS ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued May 4—decided June 8, 1939.

*Isaac Nassau,* for the appellant (plaintiff).

*James M. Carlisle,* with whom was *Lucius F. Robinson, Jr.,* for the appellees (defendants).

MALTBIE, C. J.  The plaintiff's intestate, a boy about nine years old, was last seen alive while walking along the right of way of the New York, New Haven and Hartford Railroad Company in Middlefield.  The Western Union Telegraph Company maintained a line of wires strung over poles, under an agreement with the railroad company giving to it the right to enter upon the premises for the purpose of maintaining or replacing the wires and poles, with a provision that the telegraph company should reimburse the railroad company for, and would save it harmless from, any damage done by the telegraph company or its employees.  The telegraph company was engaged in replacing certain poles along the right of way.  They had been unloaded from cars and left upon the ground.

A pole was left on the embankment beside the railroad track, with one end in the ditch at its foot. Ten days later the body of the boy was found crushed underneath the pole, which was then lying in a nearly level position in the ditch. It was claimed by the plaintiff that adults and many children were accustomed to walk along the railroad or embankment opposite it at the place where the body of the boy was found and that the defendants should have known this. The defendants, on the other hand, claimed that the boy was a trespasser, that the railroad company maintained a "No trespassing" sign on its right of way, and that neither of them knew or had any reason to know that the boy was on the right of way or that adults or other children trespassed upon it. The action was brought against the trustees of the railroad company and the telegraph company. The jury rendered a verdict for the defendants and the plaintiff has appealed.

The question of substantive law presented is as to the correctness of the charge with reference to the liability of the telegraph company. The trial court charged quite fully as to the duties of the railroad company with reference to children trespassing upon its right of way, and the plaintiff raises no question as to that portion of the charge. The only instruction upon the issue of the liability of the telegraph company was as follows: "Now passing on to the Western Union, the Western Union is in an analogous position to that of the railroad, and what I have said with reference to the railroad is applicable to it, when you consider the Western Union. In other words, this boy was a trespasser as to the Western Union; and the Western Union ordinarily owed the boy no duty; and the duty came into existence only if a nuisance existed, or if the Western Union was negligent in permitting a dangerous condition to remain upon its premises or

premises of which it had use, if children were actually trespassing, and it knew of that fact or ought to have known of it."

The plaintiff claims that the boy was not a trespasser as regards the telegraph company and that its liability was not, therefore, to be determined upon the same basis as that of the railroad company. Trespass to land is an unlawful invasion of another's right of possession. *Avery* v. *Spicer,* 90 Conn. 576, 579, 98 Atl. 135. Where one has merely an easement in the land of another such as did the telegraph company in this case, the act of a third person in unlawfully going upon the land does not constitute a trespass as regards the owner of the easement. *Bernardo* v. *Hoffman,* 109 Conn. 158, 161, 145 Atl. 884; *Smith* v. *Slocomb,* 77 Mass. 280, 285; *Osborne* v. *Butcher,* 26 N. J. L. 308, 309; *Dietrich* v. *Berk,* 24 Pa. St. 470, 471; and see *Gonchar* v. *Kelson,* 114 Conn. 262, 271, 158 Atl. 545; *Waterbury Trust Co.* v. *G. L. D. Realty Co.,* 121 Conn. 50, 52, 182 Atl. 466. This fact does not, however, establish error in the charge of the trial court. The broader issue presented is whether one who has an easement in land of another owes to a person who is a trespasser upon the land a higher duty to safeguard him from injury than does the owner himself.

The plaintiff relies upon our decision in *Bernardo* v. *Hoffman,* supra, 161. That case, however, falls within the principle that the rule as to the restricted liability of a landowner to a trespasser does not apply where neither party has a superior right in the land upon which the injury occurs. *Buckley* v. *Hickey Family Laundry Co.,* 261 Mass. 348, 350, 158 N. E. 769; *Cox* v. *United States Coal & Coke Co.,* 80 W. Va. 295, 302, 92 S. E. 559; *Daltry* v. *Media Electric Light, H. & P. Co.,* 208 Pa. St. 403, 412, 57 Atl. 1134; Restatement, 2 Torts, § 381. Some cases apply a like principle as between

one who has a mere easement upon the land and one who is a trespasser upon it. *Guinn* v. *Delaware & Atlantic Telephone Co.,* 72 N. J. L. 276, 278, 62 Atl. 412; *Humphrey* v. *Twin State Gas & Electric Co.,* 100 Vt. 414, 417, 139 Atl. 440; *Lipovac* v. *Iowa Railway & Light Co.,* 202 Iowa 517, 210 N. W. 573; *Williams* v. *Springfield Gas & Electric Co.,* 274 Mo. 1, 11, 202 S. W. 1; *Ferrel* v. *Durham Traction Co.,* 172 N. C. 682, 90 S. E. 893. In other cases the liability of the owner of the easement to a trespasser upon the land has been determined upon the same basis as that of the landowner himself. *Robbins* v. *Athol Gas & Electric Co.,* 236 Mass. 387, 389, 128 N. E. 417; *Hafey* v. *Turner Falls Power & Electric Co.,* 240 Mass. 155, 157, 133 N. E. 107; *Downes* v. *Elmira Bridge Co., Ltd.,* 58 N. Y. S. 628, 631; *Hamakawa* v. *Crescent Wharf & Warehouse Co.,* 4 Cal. (2d) 499, 50 Pac. (2d) 803; *Lindholm* v. *Northwestern Pacific R. Co.,* 79 Cal. App. 34, 40, 248 Pac. 1033; *Waller* v. *Smith,* 116 Wash. 645, 647, 200 Pac. 95.

Ordinarily a landowner is not liable to a trespasser upon his land for a failure to use care to safeguard him from injury due to conditions upon it. *Wilmot* v. *McPadden,* 79 Conn. 367, 375, 65 Atl. 157; *Salemme* v. *Mulloy,* 99 Conn. 474, 480, 121 Atl. 870. However, under our law when the presence of a trespasser becomes known the landowner owes a duty to use ordinary care to avoid injuring him. *Kalmich* v. *White,* 95 Conn. 568, 571, 111 Atl. 845; *Waselik* v. *Ferrie Construction Co.,* 114 Conn. 85, 87, 157 Atl. 428; *Shiembob* v. *Ringling,* 115 Conn. 62, 65, 160 Atl. 429. In *Carlson* v. *Connecticut Co.,* 95 Conn. 724, 730, 112 Atl. 606, we thus extended the rule of liability: "But if the owner or his servants know that the presence of trespassers is to be expected, then the common obligation of exercising reasonable care gives rise to the correlative duty

of taking such precautions against injuring trespassers as a reasonable foresight of harm ought to suggest." In the case of children who are trespassers upon land, we have stated the principle in this way: The landowner "is not ordinarily bound to anticipate and provide for the presence of trespassers since he may properly assume that they will not ordinarily be there. When, however, the owner knows or should know that children are likely to trespass upon a part of his land upon which he maintains a condition which is likely to be dangerous to them he may be held liable for harm resulting to them therefrom." *Wolfe* v. *Rehbein*, 123 Conn. 110, 113, 193 Atl. 608.

The basis of the restricted liability of a landowner to a trespasser upon his property is not that the trespasser, by his wrongdoing, has forfeited any right to recover for an injury he suffers, else the landowner would not be liable to him even under the circumstances we have stated. See *Humphrey* v. *Twin State Gas & Electric Co.*, supra; 1 Street, Foundations of Legal Liability, 155, note; *Shiembob* v. *Ringling*, supra, 66. It rests on the fact that the landowner has dominion over the land and a higher right to its use than does the trespasser, and that consequently the trespasser is to be taken to have assumed the risk of conditions upon the property; *Wilmot* v. *McPadden*, supra; *Pastorello* v. *Stone*, 89 Conn. 286, 289, 93 Atl. 529; *Ehret* v. *Village of Scarsdale*, 269 N. Y. 198, 208, 199 N. E. 56; while, on the other hand, the landowner has the right to assume, until he knows or should know to the contrary, that no one will enter upon his land without right and so in his use of the property is not chargeable with that reasonable anticipation of harm to others which in such a case as this is the basis of liability in negligence. *Stoto* v. *Waterbury*, 119 Conn. 14, 16, 174 Atl. 189; *Fitzmaurice* v. *Connecticut Ry. &*

*Ltg. Co.,* 78 Conn. 406, 409, 62 Atl. 620; *Salemme* v. *Mulloy,* supra, 481. Both of these considerations apply with equal force to one who, though not the owner of the land, is using it under a grant or license from the owner. It is only when he knows or is chargeable with knowledge of the likelihood of persons trespassing upon the property, that he is under a duty to exercise due care not to do them injury. *Mourton* v. *Poulter,* L. R. (1930) 2 K. B. 183. It is our conclusion, therefore, that the cases which apply to one using land under a grant or license from the owner the same rule of restricted liability which defines the duty of the landowner himself are the sounder in principle.

The liability of the telegraph company in negligence was in this case to be determined upon the same principles as that of the railroad company. Of course one who has a right of user in the land of another may know of the presence of trespassers or of the likelihood that there will be trespassers upon it when, under the particular circumstance, the landowner would not. In this case, however, the claims of proof of the plaintiff made no distinction between the railroad company and the telegraph company in this respect, but he claimed to have proved that "the defendants" should have known that adults and children were accustomed to pass and repass along the railroad right of way. Under the claims of proof the trial court was justified in instructing the jury that the principles governing the liability of the telegraph company were the same as those which governed that of the railroad company.

The agreement by the telegraph company to save the railroad company from harm by reason of any damage done by the former or its employees would of course not affect the question, because any liability of the telegraph company under that agreement would arise only in the event that the railroad company was

held liable in damages to persons trespassing upon the land. *Nugent* v. *Boston, C. & M. Railroad,* 80 Me. 62, 77, 12 Atl. 797.

Neither of the defendants could be held liable for the death of the child, a trespasser, upon the ground of nuisance. *Webel* v. *Yale University,* 125 Conn. 515, 7 Atl. (2d) 215. The trial court submitted to the jury the issue of the right of the plaintiff to recover from the railroad company on the ground of nuisance, and certainly he cannot complain of the instruction in this connection that the plaintiff would have the same right against the telegraph company; this was more favorable to him than he had a right to claim.

In generally outlining the issues in the action the trial court twice stated to the jury that they must be satisfied not only of the existence of negligence or a nuisance and that it was the proximate cause of the injury to the deceased but also that he was free from contributory negligence. Thereafter the trial court clearly instructed the jury that while the plaintiff must prove that the defendant was negligent and that this negligence was a substantial factor in causing the death of the deceased, the plaintiff did not have to prove that the deceased was free from contributory negligence. It stated: "Under the rule, the burden of proving that the boy was guilty of negligence contributing materially to his own death must be established by the defendant, the railroad company. . . . If the defendant fails to prove the boy guilty of contributory negligence, you must determine that issue in favor of the plaintiff." As this was an action to recover for the death of the boy, it fell within the provisions of § 1654c of the 1935 Cumulative Supplement to the General Statutes, which raises a presumption in the case of death due to negligence that the deceased was in the exercise of due care and places the burden

of pleading and proof as to contributory negligence upon the defendant. The instruction of the trial court was probably predicated upon our statement in *Hatch* v. *Merigold,* 119 Conn. 339, 342, 176 Atl. 266, that in such a situation "want of contributory negligence is still an element in the case, but the statute affords [the plaintiff] a substitute for proof of it by evidence." However correct that statement may be as a matter of logic, the instructions of the trial court that the jury must be satisfied that the deceased was free from contributory negligence would, if they stood alone, be calculated to mislead the jury. However, the later clear statement that the burden of proof upon the issue was upon the defendants and that if they failed to prove that the deceased was guilty of contributory negligence the issue was to be determined in the plaintiff's favor cannot reasonably be held to have left the jury in any confusion as to the matter.

The trial court did not in terms instruct the jury that they might find for the plaintiff against either defendant alone, but it did charge them as to the rule of damages if they should find the plaintiff entitled to recover "from either or both of these defendants" and it submitted four forms of verdict to them, which would only have been necessary had there been provision made for a verdict for the plaintiff against either of the defendants alone. The instruction of the trial court in charging the jury with reference to its function in determining issues of fact that "if you decide that the moon was made of green cheese, then the moon was made of green cheese" was a rather unfortunate hyperbole but it was immediately followed by a statement that their judgment would of course be based upon the evidence or reasonable or logical inferences to be drawn from it, and the words quoted could

not have been harmful. The comments of the trial court upon the facts in evidence did not exceed the bounds of discretion reposed in it. The other assignments of error in the charge do not require discussion.

During the trial a witness was permitted to testify for the defendant over the plaintiff's objection that after the accident he had gone to the place where it occurred with employees of the telegraph company, that he had instructed them to place the pole in the same position that it had been left when it was unloaded, that they placed it in a position conforming to certain indications upon the ground as to the place where it had previously laid and that it was secure in that position and could not have rolled without the intervention of a third person. Another witness testified that he had assisted in unloading the pole and that as placed upon the bank after the accident it was in the same position as that in which it had been left. In admitting the testimony of the first witness the trial court stated that its value would depend upon whether the pole was placed in the same position as it was before the accident. Had the witness seen the pole in its position before the accident, his testimony that it was securely placed so that it would not have rolled without the intervention of the act of a third person would have been clearly admissible. *MacLaren* v. *Bishop*, 113 Conn. 312, 313, 155 Atl. 210; *Lunny* v. *Pepe*, 116 Conn. 684, 687, 165 Atl. 552. That the basis of the testimony was the reproduction of the situation does not render it inadmissible. The evidence was of the nature of an experiment made out of court, and, where the situation created is essentially similar to that involved in the case before the court, such evidence is generally held to be admissible. *House* v. *Metcalf*, 27 Conn. 631, 636; *State* v. *McGuire*, 84 Conn.

470, 480, 80 Atl. 761; 1 Wigmore, Evidence (2d Ed.) §§ 445, 460.

There is no error.

In this opinion the other judges concurred.