ROBERT BURKE & another *vs.* ROGER A. TOOTHAKER & another.

Middlesex.    March 13, 1973. — April 17, 1973.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Wanton or Reckless Conduct.    Negligence,* One owning or controlling real estate, Trespasser, Licensee, Sand and gravel pit. *Nuisance. Corporation,* Officers and agents. *Evidence,* Relevancy and materiality. *Appeals Court.*

Evidence did not warrant a finding of wanton or reckless conduct on the part of a corporation owning a vacant tract of land of approximately one hundred acres in a sparsely populated area and containing an unfenced sand or gravel pit of about two to four acres, or on the part of an officer and stockholder allegedly in control of the corporation, toward a young trespasser or licensee who was injured while playing in

the pit when he loosened a large boulder and it rolled over his foot. [238-239]

It is not the function of this court, established as an "intermediate appellate court" by G. L. c. 211A, § 1, to alter established rules of law governing principles of substantive liability. [239]

In an action for personal injuries received by a young trespasser or licensee while playing in a sand or gravel pit against a corporation owning the pit and an individual allegedly in control of the corporation, a lack of evidence that the individual defendant occupied any relationship to the pit other than that of an officer and stockholder of the corporation necessitated a conclusion that neither defendant could be responsible for acts of the individual defendant not constituting wanton or reckless conduct, and there was no error in directing verdicts for both defendants on counts alleging the creation or maintenance of a "nuisance." [239-240]

At the trial of an action for personal injuries received by the plaintiff in a sand or gravel pit against a corporation owning the pit and an individual allegedly in control of the corporation, there was no error in striking testimony as to the activities of a bulldozer at the entrance to the pit after the accident where it did not appear by whom or by whose direction the bulldozer was being operated [240]; nor was there prejudicial error in the admission of testimony of the individual defendant as to a conversation with the chairman of the board of appeals regarding renewal of a permit for removal of sand or gravel where substantially the same testimony had been elicited from another witness without objection, and negligence was not an issue [240].

TORT. Writ in the Superior Court dated December 20, 1966.

The action was tried before *Tomasello, J.*

*Joseph J. Hurley* (*Herbert W. Finbury* with him) for the plaintiffs.

*William H. Clancy* for the defendants.

GRANT, J. This is an action of tort brought in the Superior Court to recover damages for personal injuries sustained by the minor plaintiff (the plaintiff) and for consequential damages sustained by the plaintiff's father as the result of an accident which occurred on August 28, 1966, in a sand or gravel pit in Billerica owned by the defendant M & T Construction Corporation (M & T) and allegedly under the control of the defendant Toothaker. The declaration contains twelve distinct counts by which

the plaintiff and his father separately allege that the plaintiff was injured by (1) the "wanton or reckless conduct" of each defendant and by each defendant's creation or maintenance of what are described (either in the declaration or in the brief of the plaintiff and his father) as (2) an "attractive nuisance" and (3) a "nuisance." The case is here on a consolidated bill of exceptions containing: (a) the exceptions of the plaintiff and his father to the actions of the trial judge (i) in setting aside verdicts for the plaintiff and his father which were taken under leave reserved on the counts which alleged wanton or reckless conduct on the part of Toothaker (Nos. 1 and 7) and directing the entry of verdicts for Toothaker on those counts, (ii) in directing verdicts at the close of all the evidence on the counts which alleged wanton or reckless conduct on the part of M & T (Nos. 4 and 10), (iii) in directing verdicts for both defendants on the counts alleging attractive nuisance (Nos. 2, 5, 8 and 11) and on the counts alleging nuisance (Nos. 3, 6, 9 and 12), and (iv) in excluding and admitting certain items of evidence; and (b) the exception of Toothaker to a portion of the charge to the jury. Toothaker offered at oral argument to waive this exception if the exceptions of the plaintiff and his father should all be overruled with respect to the counts addressed to him (Nos. 1 through 3 and 7 through 9).

The following is a summary of the evidence most favorable to the plaintiff. The sand or gravel pit in question comprised from two to four acres of a total vacant tract of approximately one hundred acres which, until 1964, was owned by Toothaker and a former partner of his not involved in this litigation. Vehicular access to the pit was by way of a dirt road which extended several hundred feet from Chestnut Street. No part of the pit was fenced, and foot access to the pit could be had from any part of the tract. The surrounding area was, in general, sparsely populated. There were some houses on Chestnut Street in the vicinity of the entrance to the access road. The nearest school and church were a mile and three quarters to two miles distant in Billerica Center.

In 1961 Toothaker, acting for himself and his former partner, made application to the board of appeals of Billerica under § 6 of the zoning by-law for a permit for the removal of loam, soil, clay, sand, gravel, sod and stone from a total area of approximately fifty acres which included the pit in question. A permit containing certain conditions[1] was granted which was valid for a period extending at least through the end of 1962. The evidence is indecisive as to whether this permit was subsequently extended, and as to whether any other permit was applied for, granted or required. In 1964 the entire tract was conveyed to M & T, of which Toothaker was at all times an officer and fifty percent stockholder.

No material was removed from the pit by either Toothaker or M & T. Undisclosed quantities of sand or gravel were, however, removed in each of the years 1964 through 1966. All such removal was accomplished by people other than Toothaker or M & T who would contact Toothaker and would themselves supply the equipment necessary for the removal of such amounts of material as they wished to purchase. The people who took such material would "pay him [Toothaker] or the corporation; they would pay the corporation. Sometimes he would be present when these people came in and removed gravel and sometimes he would not be." Toothaker never had any equipment of his own. He lived about a mile and a quarter from the pit and would check it approximately every other day. At various times he replaced "No Trespassing" signs on different parts of the tract; he could not say there was such a sign at the pit on the day in question. He had seen or heard of

---

[1] Section 6 1.2 of the by-law allowed the board of appeals to include in a permit "limitations of . . . removal in (a) extent of time, (b) area and depth of excavation, (c) steepness of slopes excavated, (d) distance between edge of excavation and neighboring properties or ways, (e) temporary or permanent draining, (f) the posting of security or bond, (g) the replacement of not less than six inches of topsoil over the hole of any area from which earth materials are removed where the location of such removal is afterwards to become a residential subdivision, or (h) in the case of continuing sand and gravel pit operations in one general locus, recovering the finished cut banks with a minimum of four inches of topsoil . . .." This by-law was adopted in 1960 and differs from an earlier version discussed in *Billerica* v. *Quinn,* 320 Mass. 687.

people, including children, on various parts of the tract; on the occasions when he had seen children on any part of the tract he had "kicked them out." In the week or so prior to that date he had placed a mound of dirt at the entrance to the access road to prevent people with trucks from entering the pit for the purposes of dumping trash or stealing material. There was no watchman.

The plaintiff lived about three quarters of a mile to a mile from the pit and had been in it some fifteen to twenty times in the three months preceding the accident. "No one had ever given him permission to play in the sandpit nor had anyone ever told him that he could not play in the sandpit." On August 28, 1966, he was nine years and approximately two months of age. On that day he and a boy companion of age ten years and two months entered the pit on foot. There were boulders "all over the place." The plaintiff and his companion placed themselves on the opposite sides of and slightly below a large boulder which was imbedded in the side of a steep slope. The main part of the boulder was so imbedded, and only part of it was showing. The plaintiff and his companion started kicking the "loose and soft" soil or sand around and at the base of the boulder. After about five minutes of such kicking the boulder "started to come out" of the slope, moved slightly, and then rolled over the plaintiff's left foot, crushing it.

1. As the plaintiff was a trespasser or bare licensee he could not recover for his injury unless there was wanton or reckless conduct on the part of at least one of the defendants. *Chronopoulos* v. *Gil Wyner Co. Inc.* 334 Mass. 593, 596, and cases cited. The evidence was insufficient to warrant a finding that either defendant was guilty of such conduct. See *Robbins* v. *Athol Gas & Electric Co.* 236 Mass. 387, 390; *Bruso* v. *Eastern States Exposition,* 269 Mass. 21, 25; *Mikaelian* v. *Palaza,* 300 Mass. 354, 356-357. We do not find persuasive the argument advanced by the plaintiff and his father that the facts of this case should be likened to those in the case of *Ciarmataro* v. *Adams,* 275 Mass. 521, which involved the setting of a spring gun which killed a child licensee or trespasser who opened a window of

a cottage. There was no error in directing the entry of verdicts under leave reserved or in directing verdicts at the close of the evidence for both defendants on the counts alleging wanton or reckless conduct (Nos. 1, 4, 7 and 10).

2. The plaintiff and his father concede that "[o]ur established law does not allow recovery on the 'attractive nuisance' theory" (*Prudhomme* v. *Calvine Mills, Inc.* 352 Mass. 767, 768, and cases cited) but urge that the time has come to change the rule quoted. This is an "intermediate appellate court" (G. L. c. 211A, § 1, inserted by St. 1972, c. 740 § 1), and we do not regard it as one of our functions to alter established rules of law governing principles of substantive liabililty. We are constrained to overrule the exceptions to the direction of verdicts on all the counts alleging the creation or maintenance of an attractive nuisance (Nos. 2, 5, 8 and 11).

3. Counts 3, 6, 9 and 12 allege that the plaintiff was injured by a "nuisance" created by the defendants. We assume from the cases cited by the plaintiff and his father that the intention was to allege that the defendants were either guilty of or responsible for acts of ordinary negligence which resulted in injury to the plaintiff. See *Pritchard* v. *Mabrey,* 358 Mass. 137, 140-145. They point to cases (such as *Boutlier* v. *Malden,* 226 Mass. 479, 489-490; *Sughrue* v. *Booth,* 231 Mass. 538, 539; *Sarna* v. *American Bosch Magneto Corp.* 290 Mass. 340, 344-346) in which it has been held that one who is not the owner of land or does not stand in the position of such owner may be liable for creating or maintaining a dangerous condition thereon which he knows or ought to know will result in harm to a licensee who enters upon the land and encounters that condition. The argument is that Toothaker was such a one and that M & T should be held responsible for his actions under the doctrine of respondeat superior. The difficulty with the argument is that there was no evidence from which it could be inferred that Toothaker occupied any relationship to the sand or gravel pit other than that of an officer and stockholder of M & T, which did own the pit. As such he stood in the same position as M & T, with the result that

neither he nor M & T could be held responsible for acts of his which did not constitute wanton or reckless conduct. See *Mikaelian* v. *Palaza,* 300 Mass. 354, 355-356; *Rossi* v. *DelDuca,* 344 Mass. 66, 68, 69. We conclude, therefore, that there was no error in directing verdicts for both defendants on the counts alleging the creation or maintenance of a "nuisance."

4. We come now to two evidence questions argued by the plaintiff and his father. The first exception is to the allowance of the defendants' motion to strike testimony of the building inspector of Billerica to the effect that twelve days after the accident he had seen a large bulldozer pushing stones into a depression on the right side of the entrance to the pit. As it did not appear by whom or by whose direction the bulldozer was being operated (cf. *Laskowski* v. *Manning,* 325 Mass. 393, 397-398, 399-400) there was no error in striking the evidence.

The other exception is to the admission of testimony by Toothaker that at some unspecified point in time, inferably in the period following 1964, he had spoken with the chairman of the board of appeals about renewing the permit for the removal of sand or gravel and that the chairman had said, "Are you back here again? You don't have to come back, this bond is continuous, this permit is continuous until you're done." Substantially the same testimony had previously been elicited from the clerk of the board of appeals without objection by the plaintiff or his father. They nevertheless appear to argue that they were prejudiced because the existence or not of a permit was material to the issue whether Toothaker was negligent. See *Deignan* v. *Lubarsky,* 318 Mass. 661, 664; *Matranga* v. *West End Tile Co. Inc..* 357 Mass. 194, 196-197. Our decision that negligence was not an issue in the case (point 3, *supra*) avoids the necessity for determining whether the by-law (fn. 1, *supra*) was intended as a safety regulation or, instead, as a means of preventing the creation of "desert" or "waste" areas (see *Burlington* v. *Dunn,* 318 Mass. 216, 221-222; *Butler* v. *East Bridgewater,* 330 Mass. 33, 36). No

prejudicial error has been shown in the admission of this evidence.

> *Defendant Toothaker's exceptions dismissed.*
> *Plaintiff's exceptions overruled.*