ANIELLO BERNARDO, ADMINISTRATOR, *vs.* ISRAEL J. HOFFMAN ET AL.

First Judicial District, Hartford, January Term, 1929.
*WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

Argued January 8th—decided April 30th, 1929.

* Wheeler, C. J., did not sit, but received the briefs.

*Josiah H. Peck* and *Jacob Berman,* for the appellant (plaintiff).

*Joseph F. Berry,* for the appellees (defendants).

HAINES, J.  Upon the presentation of the evidence, the trial court granted a motion to direct a verdict and judgment was entered for the defendants.  Upon the denial of her motion to set aside the verdict, the plaintiff appealed.  The court granted the motion for a directed verdict upon two grounds, viz: that the plaintiff's decedent was a trespasser upon the defendants' property, and that the evidence did not establish the liability of the defendants for negligence.

This action of the court was justified if upon the evidence the jury could not reasonably and legally have reached any other conclusion than that embodied in the verdict as rendered.  *Sedita* v. *Steinberg,* 105 Conn. 1, 5, 134 Atl. 243; *Heringer* v. *Underwood Typewriter Co.,* 103 Conn. 675, 676, 131 Atl. 322.  And in considering the evidence before us, we must accord the plaintiff-appellant the benefit of that construction most favorable to her claims. *Hayes* v. *New York, N. H. & H. R. Co.,* 91 Conn. 301, 304, 99 Atl. 694; *Greenhill* v. *Connecticut Co.,* 92 Conn. 560, 562, 103 Atl. 646.

From the evidence of record the jury could reasonably have found that the defendants-appellees were the owners of a theater building in New Britain on a

lot extending from Main Street on the west along Chestnut Street on the south with a passway on the east and another on the north side of the building. On the roof of the building was a penthouse about fourteen by twenty feet in size, which was a part of the ventilating system of the theater. The defendants owned an easement of. passage twelve feet wide in that portion of the east passway which adjoined their land. The passway itself was of varying widths, from thirteen and one half to twenty-three feet, and was owned by the Connecticut Railway and Lighting Company, the adjoining proprietor. The plaintiff's decedent, John Bernardo, was twenty-two years of age, and on the evening of April 19th, 1928, with a companion, Philip Burkarth, responded to the ringing of the fire alarm bell which was on the outside of the south wall of the theater building near the southeast corner of the building. . Over the bell were the words, "When bell rings call Police or Fire department." After reaching the building someone said to the crowd assembled there that there was no fire in fact, and the two young men stood by the fence opposite the southeast corner of the theater building and spoke to another man standing. there who thought he had smelled smoke coming from the ventilator of the theater, but upon stepping to the ventilator opening they found this was not so. They returned to the fence, and in a few seconds a loud rumble was heard, when, seeing the roof of the penthouse rolling off the top of the theater, the third man shouted, "Look out" and ran up the passway to escape, followed by the two young men. The roof of the penthouse, which was of galvanized iron about fourteen by twenty feet in size and weighing approximately eight hundred pounds, was torn from its place by a high wind then blowing, and fell from the roof of the theater into the

passway, and the plaintiff's decedent, in thus endeavoring to escape, was caught under the falling roof and so severely injured that he died the following day.

When the penthouse roof rolled over the theater cornice, and put the decedent's life in danger, he was standing at the corner of the fence on the opposite side of the passway from the theater, near the supposed line of the sidewalk and quite outside the twelve-foot space over which the defendants had a right of way. The passway at this point was about fifteen feet wide and the decedent was on the three-foot strip between the corner of the fence and the edge of the defendants' right of way.

Under these circumstances it is clear that when the danger became imminent and obvious to the decedent, he was not a trespasser upon the defendants' premises as claimed by the defendants. At most, he was a trespasser on the premises of the Connecticut Railway and Lighting Company, an adjoining property owner, and was violating no rights of the defendants. If the decedent had been injured where he stood, they manifestly could not have defended upon the ground that he was a trespasser upon their premises. If they had owned this twelve-foot strip onto which he ran or had the exclusive control of it, he would not, even then, have become more than a technical trespasser as to them. From the record it appears that these defendants had a mere easement of a twelve-foot right of way, and one which was not exclusive. In an action for trespass to land the plaintiff must show either an actual exclusive possession, or a title in connection with the fact that no one else had the actual possession. *Fitch* v. *New York, P. & B. R. Co.*, 59 Conn. 414, 422, 20 Atl. 345; *Church* v. *Meeker*, 34 Conn. 421, 422, 423.

The trial court was in error in adopting the view of the defendants and basing the directed verdict in

part upon the ground that the decedent was a trespasser upon the property of the defendants. Nevertheless if the evidence shows that the only reasonable conclusion which the jury could have reached was that the defendants were not guilty of actionable negligence as defined by law, the action of the trial court in directing the verdict must stand.

We are thus brought to consider whether the evidence was such that a finding of actionable negligence on the part of the defendants could not reasonably have been reached. It reasonably appears that the roof of the penthouse, being constructed with a four foot overhang all round, permitted a severe upward pressure from the wind; it was not anchored to the roof of the building but only secured to the top of the walls of the penthouse itself, and this by small bolts which proved insufficient in number and size to withstand the unusual pressure of the wind on the night in question; there is some evidence to justify a conclusion that one or more of the windows or doors of the penthouse were open, permitting an additional wind pressure. The theater building was one of the highest, if not the highest, building in that vicinity, and there was nothing to break the force of the wind against the penthouse on top of the roof of the theater. It developed that the construction of this penthouse was not adequate to withstand a wind of unusual velocity such as blew that evening. Whether these conditions were such that the defendants should, in the exercise of due care, have become aware of them is to be determined in the light of these and certain additional facts. The penthouse was a part of the ventilating system of the theater. This theater was designed by New York architects of thirty or forty years experience, and the ventilating apparatus was contracted for with another company experienced in

such installations, acting as subcontractor. The roof of the penthouse was constructed from specifications which were standard. The penthouse was inspected by the president of the company which built it as well as by the building inspector of the city of New Britain and the fire marshal and pronounced all right. It also appears that the fire chief had inspected this penthouse on several occasions. There is nothing in the evidence to indicate that the defendant owners of the theater acted otherwise than reasonably in basing their conclusions as to the proper construction of the penthouse upon the opinions of these men who were experienced in such matters. We do not think it could reasonably be held, in view of the foregoing and other surrounding facts, that these defendants were negligent in the matter of the construction and use of this structure.

The plaintiff also claims the defendants were negligent in what was done or omitted when and after it became probable that something had happened on the roof. Trouble was indicated by a thumping noise on the theater roof sometime after nine o'clock while an audience was in the building, and the sprinkler system discharged some water onto the stage. These incidents caused a commotion in the theater, and a fire alarm was sounded. The employees of the theater and the fire chief of the city, who happened to be in the audience, succeeded in quieting the people sufficiently so the building could be emptied, and in aid of this one or more of the employees announced, at the outside entrance, that there was no fire. It is apparent that the danger apprehended was that of fire, and there being none, the action of the employees was natural. About ten or fifteen minutes elapsed between the time the disturbance started and the falling of the penthouse roof to the ground. This

penthouse was about twenty-five feet from the edge of the theater roof, and the roof of the penthouse, weighing more than eight hundred pounds, was carried across this space by the wind and over a brick cornice several feet high before falling to the driveway below. It could not reasonably be held that, under all these circumstances, the defendants and their employees should have anticipated what happened, and protected the decedent from harm. It was a most unusual and unexpected occurrence.

Motions for directed verdicts should rarely be granted and they are justified only in exceptional cases. *Heringer* v. *Underwood Typewriter Co.,* 103 Conn. 675, 678, 131 Atl. 322; *Ulrich* v. *New York, N. H. & H. R. Co.,* 98 Conn. 567, 570, 119 Atl. 890. We are satisfied that this case is within that exception, and though the action of the trial court is based in part upon an erroneous ground, we must hold that the direction of the verdict was justified under all the circumstances of this case.

There is no error.

In this opinion the other judges concurred.