[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action brought by the plaintiff for trespass and negligence against the defendants, Ravenswood Development Corporation (hereafter "R"), the prospective purchaser of the subject property and the Bongiovanni Group, Inc. (hereafter "B"), the subcontractor hired by R to perform land surveying and other civil engineering services, including digging test holes and performing soil sampling on the subject property. The subject property is 53 acres ± (hereafter "53 acres") of essentially open land in the Town of Newington approximately 40 acres (hereafter "40 acres") of which was used to grow hay. This matter was tried before this Court on February 17, 22, 23, 2000.
 STANDARD OF REVIEW
The plaintiff has the burden of proof of his claims by a preponderance of the evidence. The defendants have the burden of proof of their special defenses by a preponderance of the evidence.
The court is basing much of its decision upon the testimony of the witnesses and the exhibits. The court's evaluation of the credibility of the witnesses is based upon their demeanor and attitude on the witness stand, the manner in which they responded to questions, the consistency and inconsistency of their testimony including conflict of their testimony with exhibits and other testimony, their recollection or lack of recollection of CT Page 4045 certain events and the interests of the witnesses and/or lack thereof.
 FINDINGS
Based upon the totality of the evidence, the court finds the following:
 1. On April 20, 1992, the Estate of Fred Young (hereafter "Estate"), owner of the 53 acres, entered into a written lease (hereinafter "lease") of said premises with the plaintiff to commence on May 1, 1992 and end April 30, 2000, "or will terminate sooner if the property is sold." The use of said premises included the harvesting of the yearly hay crop on the property.
 2. The said lease was not recorded on the land records of the Town of Newington.
 3. On August 22, 1996 the Estate entered into a contract with R for R to purchase the 53 acres for $1,957,500.00. The purpose of R purchasing the property was to develop a residential subdivision. The contract made no mention of the aforementioned lease. The contract for sale was approved by the Newington Probate Court on the same date, August 22, 1996.[1]
 4. There is no evidence that the lease was ever approved by the Probate Court.
5. A frost on November 22, 1996 killed the hay crop.
 6. There is insufficient evidence to believe that R, B or attorney Ray Madorin, who was the attorney for the Estate, were aware of the existence of the lease prior to November 20, 1996.
7. It is well settled law in Connecticut that a buyer, lessee, mortgagee or anyone else claiming an interest in land takes such interest subject to the existing leases, mortgages, and liens recorded on the land records of the town in which the property is located. The entity claiming an interest in the land may be subject to any lease of which it has actual knowledge.[2] Here, the lease was not recorded on the land records, nor brought CT Page 4046 to or approved by the Probate Court and neither R nor B were aware of the existence of the lease before they took the actions of which the plaintiff complains. The lease was not effective against the defendants. The defendants had a right to enter pursuant to the contract with the Estate. Accordingly, the defendants owed no duty to the plaintiff and are not liable to him in either trespass or negligence.
 8. Further, the plaintiff has not met his burden to show that he had exclusive possession of the premises. "In an action for trespass to land the plaintiff must show either an actual exclusive possession or a title. . ." Bernardo v. Hoffman, 109 Conn. 158, 161 (1929). The lease in this case does not grant exclusive possession to the plaintiff; and certainly there is no evidence that the plaintiff had title to the premises. Paragraph 7 reads as follows:
 "7.) ENTERING THE PROPERTY. We may enter the property at reasonable times to make physical inspections, make necessary repair or changes that are required to make. We may also enter the property at reasonable times to show the property to possible or actual purchasers, mortgage lenders, tenants, workmen or subcontractors."
 Without exclusive possession, which the plaintiff did not prove, there is no valid claim for trespass. The defendants had a right to enter the property based upon the rights flowing from the contract for sale.
9. As to the Second Count claiming negligence, the court has previously stated that the defendants owed no duty to the plaintiff as they were not subject to the lease. Without a duty owed to the plaintiff, there can be no violation thereof. Further, there was no evidence of negligence. There does not necessarily have to be an expert witness to prove negligence by the defendants. If there was a cause of action against either defendant for professional negligence, it would have to be brought by R against B, because the professional services were owed only to R which hired B. In any event, the plaintiff has sustained his burden of proving negligence, professional or otherwise, against the defendants. CT Page 4047
 10. Mitigation of damages: The court has to give more credence to the billing records and job sheets entered as exhibits by B (BGI exhibits 2 and 3) than to the unsubstantiated testimony of Edward and Robert Young. Even if they were equally believable with the defendants' evidence, the plaintiff would not have sustained his burden of proof by a preponderance of the evidence. The court finds that eight stakes were placed on the perimeter of the property on October 3, 1996 and that none had been placed prior thereto. Two stakes were placed in the interior on October 16, 1996, and fifteen wooden stakes in the interior on November 13, 1996. The court rejects plaintiff's claim of one hundred twenty two stakes and the dates on which the stakes were allegedly placed. Plaintiff testified that he would normally have harvested the hay at the end of September or early October. Since the first stakes were installed on October 3, 1996, they could hardly have interfered with harvesting prior to that date. The eight stakes installed on October 3, 1996 were on the perimeter of the property. Neither those eight stakes nor the two interior stakes installed on October 16, 1996 should have prevented the plaintiff from harvesting the hay in late September or early October. The earliest there could have been an impediment to the harvesting was November 13, 1996 when fifteen temporary wooden stakes were installed. This left September, all of October and the first twelve days of November for the plaintiff to do his harvesting without impediment by R or B. Plaintiff could have reduced his damages to zero if he had harvested during that time. Plaintiff claims that the fact that the plaintiff did not do so could only have been because there were too many stakes there for him to do so. The court is not persuaded. To believe that claim would be based upon pure speculation.
Accordingly, judgment is entered for the defendants on the complaint and on the special defenses of consent, which was clearly given by the Estate, and failure to mitigate damages.
Rittenband, J.