XIUKUN LIN, ADMINISTRATOR (ESTATE OF YAN YAN ZHANG) *v.* NATIONAL RAILROAD PASSEN-GER CORPORATION ET AL.
(SC 17346)

Sullivan, C. J., and Norcott, Katz, Vertefeuille and Zarella, Js.

2

Argued October 27, 2005—officially released January 31, 2006

*William F. Gallagher*, with whom, on the brief, was *Hugh D. Hughes*, for the appellant (plaintiff).

*Robert C. E. Laney*, with whom were *Sarah F. DePanfilis* and, on the brief, *Charles A. Deluca*, for the appellee (defendant Metro-North Commuter Railroad Company).

*Opinion*

SULLIVAN, C. J. The plaintiff, Xiukun Lin, administrator of the estate of Yan Yan Zhang, the plaintiff's decedent (decedent), brought this wrongful death action against the defendant Metro-North Commuter Railroad

Company,[1] alleging that the defendant negligently had maintained certain real property. The jury returned a verdict for the defendant and the trial court rendered judgment in accordance with the verdict. The plaintiff appeals[2] from the judgment claiming that the trial court improperly: (1) refused to instruct the jury on the misled invitee doctrine; (2) instructed the jury that the decedent had to be a constant trespasser for the constant intruder doctrine to apply; and (3) refused to instruct the jury that it could not find that the decedent was a trespasser if it found that the defendant did not own or have exclusive possession of the property. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On October 17, 1998, the decedent was struck and killed by a train while walking on a railroad trestle over the Indian River in Milford. The trestle crosses the Indian River in an east-west direction and is elevated on an embankment approximately twenty feet high. The decedent had gone to the Indian River to catch crabs with the plaintiff, the plaintiff's wife, Li Li, and a man identified by the parties only as "Mr. Jou." They arrived in the area at approximately 12:40 p.m. and parked their car on the north side of New Haven Avenue in Milford, at a point where the road is approximately 200 feet south of and parallel to the railroad tracks and trestle. The group then followed a path over vacant land to the western end of the trestle. They crossed the trestle to the east side of the river and then walked in a northerly direction to an area where they could catch crabs. They

---

[1] The plaintiff's original complaint named both the National Railroad Passenger Corporation and Metro-North Commuter Railroad Company as defendants. Thereafter, the plaintiff withdrew his complaint as to the National Railroad Passenger Corporation. References in this opinion to the defendant are to Metro-North Commuter Railroad Company.

[2] The plaintiff appealed from the trial court's judgment to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

remained in the area for approximately one hour and twenty minutes, during which time as many as four trains went over the trestle. Shortly before 2 p.m., the decedent and Li Li decided to return to the west side of the river. Li Li walked in front of the decedent as they crossed the trestle. As Li Li stepped off the trestle, she looked up toward the tracks and saw a train right in front of her, heading east. The train struck and killed the decedent.

The plaintiff filed an amended complaint alleging that the death of his decedent was a result of the defendant's negligent maintenance of the trestle. The defendant raised several special defenses, including that the decedent's death was a result of her own negligence in that she placed herself in danger by trespassing on the train tracks. The defendant also argued during certain pretrial proceedings that the decedent was a trespasser who had entered upon the land without the consent of the owner and, therefore, that the defendant had no duty to her to keep the land safe. At trial, the jury heard evidence that the state of Connecticut owned the railroad trestle and had granted rights of use to the defendant. The defendant was fully responsible for the maintenance and upkeep of the trestle and the railroad tracks in the vicinity of the trestle, including a seventy foot right-of-way on both sides of the tracks. The jury also heard evidence that the department of environmental protection had issued a publication entitled the "Angler's Guide" that designated the portion of the Indian River near the railroad trestle as a legal fishing, crabbing and duck hunting area. Several witnesses testified that, over a period of years, they regularly had used paths leading to the trestle and had crossed the trestle in order to catch crabs on the east side of the Indian River. They also had observed others do so. They testified that they never had observed signs or fences indicating that the area was private property. The only place

to walk on the trestle was on the ties of the railroad tracks, which had open spaces between them. There was no area specifically designed for pedestrian traffic.

At the conclusion of the evidence, the plaintiff requested that the trial court instruct the jury on the misled invitee doctrine.[3] The trial court declined to give

[3] The plaintiff submitted the following request to charge: "A. Definition of 'Trespasser'

"A trespasser is generally defined as a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise.

"But you may also consider a number of factors, including whether she herself was familiar with the premises, whether there was a way for her [to] know where exactly the technical boundary line was separating the defendant's right-of-way from the public land, and whether there was a fence, sign or other means for her to determine the boundary line.

"If you find that the defendant maintained the land in such a way that there was nothing to mark the exact line of separation and that [the decedent] would be naturally misled about the technical boundaries of the property, and if you find that [the decedent] was a stranger to the locality and would be unfamiliar with the premises, then the defendant cannot claim she was a trespasser.

"Additionally, if you find that [the defendant] was not the actual owner of the property it claims [the decedent] trespassed onto, or did not have exclusive possession and control of that property, they cannot defend on the grounds that [the decedent] was a trespasser.

\* \* \*

"III. DEFINITION OF 'IMPLIED' OR 'MISLED' INVITEE AND DUTIES OWED TO AN 'IMPLIED' OR 'MISLED' INVITEE

"If you find that [the defendant] has maintained its property in such a way that [the decedent] could not reasonably be expected to know whether the property was private property maintained by [the defendant], if [the decedent] could have been misled into reasonably believing the property was a public passageway, then [the decedent] was not a trespasser, but rather an implied invitee—also known as a misled invitee. For [the decedent] to be an implied or misled invitee does not mean that [the defendant] actually invited [the decedent] onto its tracks for any purpose. Rather, it has to do with whether [the defendant] maintained the property such that [the decedent] had some way of knowing that she was entering onto private property.

"Among the factors you can consider are whether there was any visible line of demarcation separating the property maintained by [the defendant]. If you find that [the decedent] was an implied or misled invitee, then [the defendant] owed [the decedent] a duty of exercising reasonable care to maintain the property in a reasonably safe condition. If [the defendant] failed to exercise reasonable care to maintain the property in a reasonably

the requested instruction. The jury returned a special verdict finding that the decedent had been a trespasser and that the accident had not been proximately caused by the defendant's negligence. The plaintiff then filed a motion to set aside the verdict, which the trial court denied. Thereafter, the court rendered judgment for the defendant in accordance with the verdict. This appeal followed.

I

We first address the plaintiff's claim that the trial court improperly refused to instruct the jury on the misled invitee doctrine. We disagree.

At the outset, we set forth the standard of review. "The court has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding." *Batick* v. *Seymour*, 186 Conn. 632, 641, 443 A.2d 471 (1982). Whether the evidence presented by the plaintiff could support a finding that the decedent was a misled invitee is a question of law over which our review is plenary. See *Zachs* v. *Zoning Board of Appeals*, 218 Conn. 324, 331, 589 A.2d 351 (1991) ("[t]he sufficiency of the evidence to support a finding . . . clearly presents a question of law").

A review of the evolution of the misled invitee doctrine in this state provides the legal background for our resolution of this claim. This court first adopted a version of the misled invitee doctrine in *Crogan* v. *Schiele*, 53 Conn. 186, 1 A. 899 (1885). In that case, the plaintiff was injured when she fell into a pit located on the defendant's property between a public sidewalk and the defendant's building. Id., 197. The area surrounding the pit was paved with the same material and in the same manner, and was on the same grade as the public

---

safe condition and [the decedent] was harmed as a result of this failure, [the defendant] is subject to liability."

sidewalk. Id. The plaintiff brought an action against the defendant claiming that he negligently had maintained the property. Id., 186–87. The defendant raised the defense that the plaintiff was a trespasser. Id., 190. The trial court agreed with the defendant and rendered judgment for nominal damages only. Id.

On appeal, this court concluded that the defendant "had so constructed and built the extension of the sidewalk as to induce and allure people to use it as, and to suppose it to be, a part of the public way. As to persons lawfully using it he thus constituted it an inseparable part and parcel of the public way. Persons using it within the scope of the purpose so plainly indicated by the owner are not trespassers, and are protected by the law from dangerous excavations, pits and traps." Id., 200. "For if there was an apparent public way a person . . . has a right to proceed upon the assumption that guards against dangers are provided co-extensive with the apparent purpose and use of the way." Id., 203. Accordingly, we concluded that the plaintiff was not a trespasser and that she was entitled to damages. Id., 207.

We again applied the doctrine in *Sedita* v. *Steinberg*, 105 Conn. 1, 134 A. 243 (1926). In that case, the plaintiff, a young boy, was injured when he fired a toy gun into the intake pipe of an underground gasoline tank located on the defendant's property, causing the tank to explode. Id., 3–4. The tank was located in an area between the buildings on the defendant's property and the public sidewalk. Id., 3. The area was paved in the same manner as the sidewalk. Id. The plaintiff sued the defendant on a theory of premises liability and the defendant raised the defense that the plaintiff was a trespasser. Id., 4. The trial court agreed that the plaintiff was a trespasser and directed a verdict for the defendant. Id. On appeal, this court concluded that the jury reasonably could have found facts that would bring the

case under the principle that we adopted in *Crogan.* Id., 8. Accordingly, we concluded that the trial court improperly had directed a verdict for the defendant and ordered a new trial. Id., 10–11.

In *Mercier* v. *Naugatuck Fuel Co.*, 139 Conn. 521, 524–25, 95 A.2d 263 (1953), the plaintiff was injured when he fell into a pit located at a gas station owned by the defendant. The evidence presented at trial established that the pit was located in an area where the layout and construction of the gas station gave it the appearance of a thoroughfare. Id., 523–24. The plaintiff sued the defendant on the theory that he had entered the defendant's premises as an invitee. Id., 525. The jury returned a verdict for the plaintiff. Id., 522. On appeal, this court stated that "[a] possessor of land who so maintains a part thereof that he knows or should know that others will reasonably believe it to be a public highway, is subject to liability for bodily harm caused to them while using such part as a highway, by his failure to exercise reasonable care to maintain it in a reasonably safe condition for travel." (Internal quotation marks omitted.) Id., 526, quoting 2 Restatement, Torts § 367 (1934). "The rule applies only to those whom the possessor of the land has misled. . . . If they are in fact misled and for that reason enter upon the land, they are not trespassers but invitees. . . . Under such circumstances, the possessor owes them the duty of exercising reasonable care to maintain the land in a reasonably safe condition." (Citations omitted.) *Mercier* v. *Naugatuck Fuel Co.*, supra, 526. We concluded that the jury reasonably could have found that the plaintiff was misled into believing that the area was a public highway and affirmed the judgment of the trial court. Id., 526–27.

In *Lucier* v. *Meriden-Wallingford Sand & Stone Co.*, 153 Conn. 422, 423, 216 A.2d 818 (1966), the plaintiff was killed when he drove his motorcycle into a cable

barrier maintained by the defendant across its private road. The plaintiff brought an action against the defendant for negligent maintenance of the property. Id. Evidence presented at trial established that the road connected two public highways and served as a means of access for the public to the defendant's sand processing plant. Id., 427. The road was unpaved, but it was graded to a smooth traveling surface suitable for vehicles. Id. The defendant knew that the public used its road and, for that reason, erected the barrier. Id., 428. The cable was difficult to see because it was the same dark brown color as the roadside vegetation and was three-eighths of an inch in diameter. Id. The jury returned a verdict for the plaintiff and the trial court rendered judgment accordingly. Id., 424. On appeal, this court concluded that the jury reasonably could have found the defendant liable under the " 'misled invitee' " doctrine. Id., 429; id., 425 (characterizing rule set forth in *Mercier* v. *Naugatuck Fuel Co.*, supra, 139 Conn. 526–28, as " 'misled invitee' doctrine"). Accordingly, we affirmed the judgment. *Lucier* v. *Meriden-Wallingford Sand & Stone Co.*, supra, 429.

The plaintiff argues that the misled invitee doctrine applies in the present case because the defendant maintained the railroad trestle and surrounding right-of-way in such a way that the decedent could not have known that she was trespassing when she followed the path across the boundary of the right-of-way. We are not persuaded. In the cases cited by the plaintiff, the injured parties were lured by the misleading appearance of a safe highway to the dangerous conditions, which were, to varying degrees, concealed. The primary rationale for the misled invitee doctrine is that if an area appears to a reasonable traveler to be a safe public highway, the person who created that misleading impression should assume the risk of injury rather than the innocent traveler. See 2 Restatement (Second), Torts, Condition and

Use of Land § 367, comment (a), p. 267 (1965) ("[o]ne whom a possessor of land intentionally or negligently misleads into believing that part of his land is a public highway, is entitled to expect that the possessor will afford him a security similar to that which he would be entitled to expect were the land actually a highway"). Conversely, if it is obvious that a distinct area is inherently dangerous, then a reasonable traveler would have no reason to assume that the area is an extension of a public highway, where he is entitled to safety.

In the present case, the railroad trestle itself constituted an extension of the area that the plaintiff claims should be treated as a public highway and it was obviously dangerous.[4] The evidence produced at trial established that the only place to walk on the trestle was on the railroad ties and that several trains had crossed the trestle while the decedent was in the near vicinity. No reasonable juror could conclude, therefore, that the decedent could have been misled by the appearance of safety to believe that the trestle afforded the same level of security that she would have been entitled to expect had it been a public highway.[5] Accordingly, we conclude

---

[4] There was testimony at trial that this trestle was particularly dangerous because of the high volume of train traffic, the high speed of the trains, the fact that eastbound trains could not be seen from the trestle until twelve seconds before they reached the trestle, the fact that the trains could not be heard from the trestle until three to four seconds before they reached the trestle and because walking on the ties made it necessary to look down while crossing the trestle. We recognize that the decedent may not have known of these conditions. Nevertheless, it is a matter of common sense that walking on an active railroad track involves some level of risk and that the risk is even greater on an active railroad trestle. This is not to suggest that it necessarily would *defy* common sense to use a railroad trestle as a walkway under any circumstances or that there is never any need to warn pedestrians of the dangers of doing so. It is only to suggest that a reasonable person could not conclude that a railroad trestle consisting of active railroad tracks was *intended* to be used as a pedestrian walkway.

[5] Indeed, the existence of such an obviously dangerous obstacle might lead a reasonable person to believe that the path leading up to the trestle was not a public highway.

that the trial court properly refused to instruct the jury on the misled invitee doctrine.

## II

We next address the plaintiff's claim that the trial court improperly instructed the jury on the constant intruder doctrine. Specifically, the plaintiff claims that the trial court improperly instructed the jury that "[t]he plaintiff, to have the benefit of this exception to the rule [that a landowner owes no duty of reasonable care to a trespasser] must prove by a fair preponderance of the evidence that trespassers, [*the decedent*] *among them*, constantly intruded on a right-of-way, tracks and trestle, maintained and possessed by [the defendant]." (Emphasis added.) The plaintiff argues that this instruction misled the jury to believe that, for the doctrine to apply, the decedent must have intruded constantly on the defendant's property. Because the evidence established that the decedent had not been to the area before the day of the accident, the plaintiff argues, the charge amounted to an instruction that the defendant owed the decedent no duty. The defendant counters that this issue was not preserved for appeal because the plaintiff failed to take exception to the instruction as given. We agree with the defendant.

The following additional procedural history is relevant to our resolution of this issue. The plaintiff submitted to the trial court a request to charge containing the following proposed instruction: "If you find that there were well-worn paths leading to the tracks at the Indian River trestle, and that there was a specified traveled path commonly used in crossing the railroad's right-of-way, [the defendant] is charged with knowledge of those conditions which it should, in the exercise of reasonable care, have observed. If you find that there were pathways in general use for a long time, [the defendant] was bound to exercise reasonable care toward

persons using them." The trial court instructed the jury on the constant intruder exception to the rule that a landowner owes no duty of reasonable care to a trespasser,[6] but included the challenged language. The plaintiff did not take exception to this instruction.[7]

The jury began deliberations on the same day that it was instructed. At 4:30 p.m., it sent a note to the court

---

[6] The trial court instructed the jury as follows: "A trespasser is a person who enters or remains upon land in the possession of another without any privilege to do so, ordinarily a possessor of land owes no duty to safeguard from harm a person who comes on the land as a trespasser. The possessor has a right to assume that no one will trespass. The possessor has no duty to keep the land reasonabl[y] safe for adult trespassers, rather there is only a duty to refrain from intentional, wilful, wanton or reckless conduct that causes injury to the trespasser. But as with many rules there's an exception. If a possessor of land has knowledge, however, that trespassers constantly intrude upon a limited area of the land the possessor of land is liable for an artificial condition that caused injury to the trespasser on that part of the land if all of the following conditions are met: one, the condition is one that the possessor has created or maintains; two . . . the condition is one [that] to the possessor's knowledge is . . . likely to cause death or [serious] bodily harm to such trespassers; three, the condition is of such a nature that the possessor has reason to believe that trespassers will not discover it; and four, the possessor has failed to use reasonable care to warn such trespassers of the artificial condition and the risks involved.

"In addition, with respect to activities highly dangerous to constant trespassers there is also a rule that a possessor of land who knows or from facts within his knowledge should know that trespassers constantly intrude upon a limited area is subject to liability for bodily harm there caused to them by their failure to carry on an activity involving a risk [of] death, or serious bodily harm with reasonable care for a constant trespasser's safety. The owner or possessor of land, in this case possessor, must take reasonable precautions against injuring trespassers if the owner or possessor of the land has reason to expect the presence of trespassers. In determining what reasonable precautions are, a jury is entitled to consider any failure or omissions by the defendant, if any, and things that the defendant should have done, if any, but did not do so. The plaintiff, to have the benefit of this exception to the rule must prove by a fair preponderance of the evidence that trespassers, [the decedent] among them, constantly intruded on a right-of-way, tracks and trestle, maintained and possessed by [the defendant]."

[7] After the trial court gave the charge, the jury was excused. Counsel for the plaintiff stated to the court, "Your Honor, as far as the plaintiff is concerned I see that we're protected by the requests that we filed and as to the charge as given I have no exceptions." The court responded, "[C]ertainly I know they're coming because of our rulings previously on law."

indicating that it would like to hear the instructions again. The next morning, the jury clarified that it did not want to hear the entire charge and indicated by a show of hands the sections that it wanted to hear. The court reread the section of the charge pertaining to the constant intruder exception, including the challenged phrase.

"It is well settled . . . that a party may preserve for appeal a claim that an instruction . . . was . . . defective either by: (1) submitting a written request to charge covering the matter; or (2) taking an exception to the charge as given. *State* v. *Ramos*, 261 Conn. 156, 170, 801 A.2d 788 (2002); see also Practice Book § 16-20.[8] [T]he purpose of the [preservation requirement] is to alert the court to any claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials. . . . *State* v. *Ramos*, supra, 170; see also *Henderson* v. *Kibbe*, 431 U.S. 145, 154, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977) ([o]rderly procedure requires that the respective adversaries' views as to how the jury should be instructed be presented to the trial judge in time to enable him to deliver an accurate charge and to minimize the risk of committing reversible error). Thus, the essence of the preservation requirement is that *fair notice* be given to the trial court of the party's view of the governing law and of any disagreement that the party may have had with the charge actually given." (Emphasis in original; internal quotation marks omitted.) *State* v. *Ross*, 269 Conn. 213, 335–36, 849 A.2d 648 (2004).

We have held that "a request to charge that provides a party's version of generally applicable law, such as

[8] Practice Book § 16-20 provides in relevant part: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. . . ."

the burden of proof, on which the court is bound to instruct the jury regardless of whether a charge is requested, does not necessarily preserve a claim that the instruction actually given on that issue was defective. The trial court should not be required to choose between adopting a party's presumably self-serving version of the law wholesale and relinquishing any expectation that it will be notified by that party of errors in the charge actually given." Id., 336. For the same reason, we conclude that, when a party submits a request to charge on a specific legal doctrine and the trial court charges the jury on that issue, but uses different language than that contained in the request to charge, the filing of the request to charge does not preserve for review a claim that the language actually used was defective. Cf. *State* v. *Melendez*, 74 Conn. App. 215, 229, 811 A.2d 261 (2002) (when defendant objected generally to giving jury instruction on consciousness of guilt but did not object to wording of charge actually given, claim of instructional error was not preserved), cert. denied, 262 Conn. 951, 817 A.2d 111 (2003); *State* v. *Smith*, 65 Conn. App. 126, 143–44, 782 A.2d 175 (2001) (claim of instructional error not preserved when defendant submitted general request to charge regarding credibility of witnesses but did not take exception to wording of charge actually given), rev'd on other grounds, 262 Conn. 453, 815 A.2d 1216 (2003). Because the plaintiff in the present case failed to take exception to the charge as given, we conclude that this claim is not preserved for review.

## III

Finally, we address the plaintiff's claim that the trial court improperly refused to instruct the jury that it could not find that the decedent was a trespasser if it found that the defendant did not own or have exclusive possession and control over the train tracks and right-of-way. We disagree.

The following additional procedural history is relevant to our resolution of this issue. In his amended complaint, the plaintiff alleged that "[t]he railroad tracks and the railroad trestle over the Indian River, and the area immediately surrounding the same, were controlled, possessed, managed, and/or maintained by the defendant . . . ." The defendant admitted that it maintained the railroad tracks and trestle and, with respect to the remaining allegations, asserted that it had "insufficient knowledge to form a belief as to the truth thereof, and therefore denies [the] same and leaves the plaintiff to his proof." As we have indicated, the defendant argued during certain pretrial proceedings that the decedent was a trespasser who had entered upon the land without the consent of the owner and, therefore, that the defendant had no duty to her to keep the land safe. At trial, the plaintiff presented testimonial evidence that the defendant had "full responsibility to maintain the right-of-way" and that "control of the track in the vicinity of the Indian River for purposes of safety was in [the defendant]." The plaintiff also presented evidence that the state owned the tracks and the right-of-way. After evidence was concluded, the plaintiff submitted a request to charge the jury that, "if you find that [the defendant] was not the actual owner of the property it claims [the decedent] trespassed onto, or did not have exclusive possession and control of that property, [the defendant] cannot defend on the grounds that [the decedent] was a trespasser." The trial court declined to give the requested instruction.

The plaintiff now claims that the jury reasonably could have found that the defendant "was not the actual owner of the land and did not have exclusive control and possession" because the evidence established that the state owned the track and right-of-way.[9] He argues

_____

[9] The plaintiff argued to the trial court that the evidence showed that the defendant did not have exclusive control and possession of the right-of-way and railroad tracks because there was evidence that a separate entity, the

that, if the defendant did not have exclusive control and possession or title, the decedent could not have been a trespasser as to the defendant. See *Bernardo* v. *Hoffman*, 109 Conn. 158, 161, 145 A. 884 (1929) ("[i]n an action for trespass to land the plaintiff must show either an actual exclusive possession, or a title in connection with the fact that no one else had the actual possession"). In other words, the plaintiff claims that, although the defendant had sufficient possession and control of the right-of-way and railroad tracks to be liable to persons injured there,[10] it could not avoid liability on the ground that the decedent was a trespasser unless it had exclusive possession and control over or title to the land. We disagree because we conclude that the defendant's undisputed right to be on the state's land to maintain the right-of-way and the railroad tracks

National Railroad Passenger Corporation, ran the trains on the track. The plaintiff incorporated this argument into his brief to this court by reference. The plaintiff has not provided any analysis of what constitutes control or possession, however, nor has he explained how this entity's activities removed control and possession from the defendant. "Analysis, rather than abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Ward* v. *Greene*, 267 Conn. 539, 546, 839 A.2d 1259 (2004). Accordingly, we deem this claim abandoned.

[10] We note that liability in a premises liability case is based solely on control and possession, not title. See *Rosa* v. *American Oil Co.*, 129 Conn. 585, 589, 30 A.2d 385 (1943) ("it is upon control and possession of the premises, as distinguished from title, that a defendant's liability is predicated in [a premises liability] case"). Moreover, in our cases involving claims of premises liability, it does not appear that we have required the plaintiff to show that the defendant had exclusive possession. See *Gazo* v. *Stamford*, 255 Conn. 245, 249, 765 A.2d 505 (2001) ("premises liability . . . requires that the party to be held liable be in control of the property"); *Mack* v. *Clinch*, 166 Conn. 295, 296, 348 A.2d 669 (1974) ("liability [in premises liability cases] can be predicated upon negligence in the control and possession of premises, as opposed to mere ownership thereof"); *Rosa* v. *American Oil Co.*, supra, 589 (control and possession of premises, as distinguished from title, are basis for defendant's liability in premises liability case); compare *Bernardo* v. *Hoffman*, supra, 109 Conn. 161 ("[i]n an action for trespass to land the plaintiff must show either an actual exclusive possession, or a title in connection with the fact that no one else had the actual possession").

entitled it to defend against liability on the ground that the decedent was a trespasser.

As a preliminary matter, the plaintiff has not established the factual predicate for his claim. Specifically, he has not explained how the jury could infer from the fact that the state had title to the tracks and right-of-way that the defendant did not have exclusive possession and control of those areas. Even if the evidence supported such a finding, however, the plaintiff still could not prevail on his claim that, in the absence of exclusive possession and control, the defendant was required to have title to the right-of-way and railroad tracks in order to avoid liability on the ground that the decedent was a trespasser. We considered and rejected an identical claim in *McPheters* v. *Loomis*, 125 Conn. 526, 7 A.2d 437 (1939). In that case, the defendant, Western Union Telegraph Company (Western Union), maintained a "line of wires strung over poles, under an agreement with the railroad company giving to it the right to enter upon the premises for the purpose of maintaining or replacing the wires and poles . . . ." Id., 528. During the course of performing maintenance on the wires and poles, Western Union deposited several replacement poles along the right-of-way. Id., 528–29. The plaintiff's decedent, a nine year old boy, was found crushed to death under one of the poles. Id., 529. The plaintiff brought a negligence action against Western Union and the railroad company claiming that the defendants should have known that adults and children walked along the railroad. Id. The defendants claimed that the plaintiff's decedent was a trespasser and, therefore, that they owed no duty to him. Id. The trial court instructed the jury that the plaintiff's decedent had been a trespasser as to Western Union. Id. The jury returned a verdict for the defendants, and the plaintiff appealed. Id.

On appeal, the plaintiff claimed that the plaintiff's decedent had not been a trespasser as to Western Union because, under *Bernardo*, "[w]here one has merely an easement in the land of another such as did the telegraph company in this case, the act of a third person in unlawfully going upon the land does not constitute a trespass as regards the owner of the easement." *McPheters* v. *Loomis*, supra, 125 Conn. 530. In *Bernardo*, the plaintiff's decedent was killed when he was struck by iron roofing material that fell from a building owned by the defendants. He had been standing on an adjacent property when he became aware that the material was falling. *Bernardo* v. *Hoffman*, supra, 109 Conn. 161. In an unsuccessful attempt to avoid the material, the plaintiff's decedent ran into a passway between the defendants' building and an adjacent building, over which the defendants had an easement. Id. The trial court granted the defendants' motion for a directed verdict on the ground that the plaintiff's decedent was a trespasser. Id., 159.

On appeal, this court held that it was "clear that when the danger became imminent and obvious to the decedent, he was not a trespasser upon the defendants' premises as claimed by the defendants. At most, he was a trespasser on the premises of the Connecticut Railway and Lighting Company, an adjoining property owner, and was violating no rights of the defendants. If the decedent had been injured where he stood, they manifestly could not have defended upon the ground that he was a trespasser upon their premises. If they had owned this twelve-foot strip onto which he ran or had the exclusive control of it, he would not, even then, have become more than a technical trespasser as to them. From the record it appears that these defendants had a mere easement of a twelve-foot right-of-way, and one which was not exclusive. In an action for trespass to land the plaintiff must show either an actual exclusive

possession, or a title in connection with the fact that no one else had the actual possession." Id., 161. Accordingly, we concluded that the trial court improperly had directed a verdict for the defendants on the ground that the plaintiff's decedent had been a trespasser. Id., 161–62.

In *McPheters*, we rejected the plaintiff's claim that *Bernardo* stood for the proposition that "one who has an easement in land of another owes to a person who is a trespasser upon the land a higher duty to safeguard him from injury than does the owner himself." *McPheters* v. *Loomis*, supra, 125 Conn. 530. We determined that the true rationale for the result in *Bernardo* was that "the restricted liability of a landowner to a trespasser does not apply where neither party has a superior right in the land upon which the injury occurs."[11] Id. We then rejected the plaintiff's argument that a defendant who has a right to be on the land, but not title, has a duty of care to trespassers. We noted that the rationale for the restricted liability of a landowner to a trespasser on his property was that "the landowner has dominion over the land and a higher right to its use than does the trespasser, and that consequently the trespasser is to be taken to have assumed the risk of conditions upon the property . . . while, on the other hand, the landowner has the right to assume, until he knows or should know to the contrary, that no one will enter upon his land without right and so in his use of the property is not chargeable with that reasonable anticipation of harm to others . . . ." (Citations omitted.) Id., 532. We concluded that, because a person using the land under a grant or license from the owner

---

[11] It is not clear why we determined in *McPheters* that the defendants in *Bernardo*, who had an easement over the passway, did not have a superior right to be on the land. We may have assumed that the public had a right to use the passway or that the plaintiff's decedent had a right to be there because he was attempting to avoid the material that fell from the defendants' building.

has the same right as the owner to assume that no one will enter the land without right, the same rule of restricted liability that defines the duty of the owner defines the duty of a grantee or licensee. Id., 533. We concluded, therefore, that the trial court properly instructed the jury that the plaintiff's decedent was a trespasser as to Western Union. Id., 533–34.

Thus, in a premises liability case, such as the present case, possession and control of the land subject a defendant to liability to persons injured on the land; see footnote 10 of this opinion; while a right to be on the land, even if limited, enables the defendant to avoid liability on the ground that the plaintiff or his decedent were trespassing on the land. In contrast, in order to prevail in an action for trespass, the plaintiff must establish either that he was in exclusive possession and control of the land or that he was the owner of the land and that no one else had possession. See *Bernardo* v. *Hoffman*, supra, 109 Conn. 161. In *Bernardo*, which is the sole authority relied on by the plaintiff in the present case, we improperly confused these standards when we suggested that the defendants in that case could not avoid liability on the ground that the plaintiff's decedent was a trespasser because they did not have exclusive possession and control over or title to the land.

The plaintiff in the present case does not dispute that the defendant had a right to be on the state's land to maintain the right-of-way and the railroad tracks. Accordingly, we conclude that the trial court properly refused to instruct the jury that it could not find that the decedent was a trespasser if it found that the defendant was not in exclusive possession of the land and did not have title to the land.

The judgment is affirmed.

In this opinion the other justices concurred.