******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

AMY CHAMPEAU, ADMINISTRATOR (ESTATE
OF BRIAN HASKELL) *v.* MARK
BLITZER, M.D., ET AL.
(AC 36431)

Gruendel, Prescott and Harper, Js.

*Argued January 15—officially released May 12, 2015*

(Appeal from Superior Court, judicial district of New
Haven, Wilson, J.)

*Charles R. Douthat*, for the appellant (plaintiff).

*James B. Rosenblum*, with whom, on the brief, was
*Diana M. Carlino*, for the appellees (defendants).

*Opinion*

HARPER, J. In this medical malpractice action, the plaintiff, Amy Champeau, the administrator of the estate of Brian Haskell (decedent), appeals from the judgment of the trial court rendered in favor of the defendants, Mark Blitzer and Arrhythmia Center of Connecticut, following a jury trial.[1] On appeal, the plaintiff claims that the court improperly (1) charged the jury on the doctrine of causation, and (2) provided a legally incorrect interrogatory to the jury that affected the jury's verdict. We agree with the plaintiff and, therefore, reverse the judgment of the trial court and remand the case for a new trial.[2]

The following facts and procedural history are relevant to this appeal. The decedent died on June 25, 2007, from an episode of ventricular tachycardia.[3] The decedent was found by his roommate, Fred Scandale, in his home next to a treadmill. Prior to his death, the decedent was very engaged in athletics including tennis, running, and skiing.

The decedent's health issues came to a physician's attention for the first time during an emergency room visit on April 5, 2007, the day after an incident in which he passed out when running. In the emergency room, the decedent relayed his health history to the physician, which included that he had had prior episodes of passing out after running. Upon leaving the emergency room, the decedent was instructed that he should not partake in physical activity, particularly running. The decedent was referred to Henry Ward, a cardiologist, who diagnosed him with ventricular tachycardia. Ward referred the decedent to the defendant, a cardiologist and electrophysiologist, and the decedent became his patient on April 16, 2007. As noted by the trial court: "Following diagnostic testing, [the defendant] determined that [the decedent] was likely experiencing one of two possible arrhythmias. The first, known as catecholaminergic polymorphic ventricular tachycardia (CPVT), is caused by physical exertion and stress, and carries with it a high potential for sudden death if left untreated. The second, known as left posterior fascicular ventricular tachycardia, presents with a low risk of death and is not triggered by physical exertion or stress." Left posterior fascicular ventricular tachycardia is a variant of idiopathic ventricular tachycardia (IVT). The defendant treated the decedent for this type of IVT.

From April 17, 2007, to April 20, 2007, the decedent was admitted to the Hospital of St. Raphael for extensive testing. The defendant's partner, Mark Marieb, an electrophysiologist, surgically implanted into the decedent's chest a cardiac defibrillator (defibrillator), a programmable device that was designed to pace the heart and shock it when an arrhythmia occurred. The defendant also prescribed the medication Toprol, a beta-

blocker.[4] Upon discharge from the Hospital of St. Raphael, the decedent received oral instructions not to engage in vigorous activity, although there was no written documentation either in the progress notes or in the April 20, 2007 discharge summary regarding any restriction on the types of activities or exercise in which he could participate.

Prior to his death, the decedent had numerous interactions with medical professionals, particularly after he received shocks from his defibrillator. These events occurred after the decedent engaged in various types of activity or exercise. None of the physicians placed any documentation in the decedent's medical record indicating that he was to refrain from or restrict his exercise regimen. The first such incident occurred on April 30, 2007, and resulted in the defendant ordering a stress test to be completed in one to two weeks and an increase of his Toprol dosage. The second incident occurred on May 28, 2007, after which the decedent was taken to Elmhurst Hospital in New York and examined by Artie Shah, an electrophysiologist. Shah was told that the decedent suffered from IVT, and changed his medication from Toprol to Sotalol, a potassium channel blocker that has weak beta-blocking effects and is not known to be effective in preventing the risk of sudden cardiac death. The defendant was notified of this incident in New York and the resulting hospitalization, and approved of the medication change.

On June 8, 2007, the decedent experienced heart palpitations at work and was taken to St. Vincent's Hospital in Bridgeport. The decedent was seen by a Jeffrey Berman, a cardiologist. The decedent told Berman that he was running between five and seven miles daily. Berman consulted by telephone with the defendant, and together, they decided to increase the decedent's Sotalol dosage.

On June 11, 2007, the decedent visited the defendant in his office. At that time, the defendant had the result of the stress test that had been ordered, the records from St. Vincent's Hospital, and a printout of all the recorded activity from the decedent's defibrillator. From the time that the defibrillator was implanted on April 20, 2007, until June 11, 2007, the decedent had twenty-six recorded episodes of ventricular tachycardia. After this office visit, the defendant wrote a three page report. This report detailed the decedent's exercise regime, but did not discuss any limitations on his activity. On June 18, 2007, the defendant provided a note to the decedent to give to his employer that released him to work full duty and did not provide for any restriction or limitation on his activities. On June 25, 2007, the decedent died while exercising on a treadmill in his home. At this point in time, the decedent was taking Sotalol, not Toprol, and the shocks given by his defibrillator did not restore normal rhythm to his heart.

The plaintiff brought this action on July 10, 2009, and a jury trial was held in June and July of 2013. The plaintiff and the defendants each put on expert witnesses, who disagreed on the proper diagnosis of the decedent. The plaintiff's expert witness, Heather Bloom, a cardiologist and electrophysiologist, testified that the decedent's diagnosis of rapid cardiac rhythm, caused by an electrical abnormality of the heart, can be fatal without proper treatment and lifestyle changes. Further, Bloom stated that, in her expert opinion, the decedent suffered from CPVT, a rare cardiac arrhythmia triggered by adrenaline that carries with it a high risk of sudden cardiac death. Accordingly, Bloom testified that the defendant's decision not to diagnose the decedent with CPVT fell below the standard of care. In Bloom's opinion, "the diagnosis of CPVT or the possibility of CPVT is important for anyone to understand that this is an adrenaline-triggered arrhythmia and they need to avoid adrenaline. What that comes down to really is avoiding heavy activity in sports. And it seems to be very clear that although the possibility exists for medicines to control it, until it's very clearly documented the medicines are there, that they are functioning, that the arrhythmia is not happening, there is a risk of sudden death and it's critical to avoid exertion until that's under control and clarified."

The defendants' expert witness, Peter Zimetbaum, a cardiologist and electrophysiologist, testified that the decedent did not suffer from CPVT, but, instead, he suffered from IVT, a more benign disease. At trial, the defendant testified that he considered the diagnosis of CPVT, but instead came to the diagnosis of IVT without conducting genetic testing for CPVT. Zimetbaum opined that the defendant's actions were within the applicable standard of care.

On July 12, 2013, the court held a charge conference to discuss a draft of the proposed jury charge, which previously had been provided to the parties. Both parties objected to the proposed charge and submitted written exceptions to the charge.[5] On July 15, 2013, the charge was given to the jury and on July 16, 2013, the jury returned a verdict in favor of the defendants. On July 19, 2013, the plaintiff filed a motion to set aside the verdict, which, among other things, claimed that the jury interrogatory and instructions on proximate cause were improper. The motion was denied by the trial court in a December 20, 2013 memorandum of decision. The plaintiff then filed this appeal. Additional facts will be set forth as necessary.

The plaintiff's claims on appeal are inextricably intertwined, and, therefore, we discuss them together. First, the plaintiff claims that the court provided a legally incorrect interrogatory to the jury that affected the jury's verdict. Second, she claims that the court improperly charged the jury on the doctrine of causation as

applied to this case. When taken in conjunction with one another, the plaintiff argues that the court committed reversible error. We agree with the plaintiff.

The following additional facts are relevant to the discussion of the plaintiff's claims. On July 12, 2013, the court held a lengthy charge conference to discuss the draft jury charge, which previously had been provided to the parties, as well as proposed interrogatories. The proposed interrogatories, as read out loud during the charge conference, were as follows: "[N]umber one, did the defendants . . . breach the standard of care in one or more of the pleas alleged in the plaintiff's complaint, yes or no? If you answer—if your answer is no you will proceed no further and enter verdict for the defendants. If your answer [is] yes then proceed to question two. Two, was the [defendants'] deviation from the standard of care *a proximate cause* of [the decedent's] death, yes or no? If [your] answer is no you will proceed no further and enter verdict for the defendants. If your answer is yes then you would enter verdict for the plaintiff and determine the amount of damages." (Emphasis added.) The court stated that a copy of these interrogatories would be given to the parties "in actual interrogatory form" at the conclusion of the court session on that day.

During the charge to the jury on July 15, 2013, the court vacillated between stating (1) that the plaintiff had the burden to prove that the defendant was "*the proximate cause*" of the decedent's death, and (2) that the plaintiff had the burden to prove that the defendant was "*a proximate cause*" of the decedent's death. At one point during the charge, the court used the terms "the proximate cause" and "a proximate cause" in successive sentences.[6]

The court charged the jury in relevant part: "If you find, by a fair preponderance of the evidence, that the negligence—that the alleged negligence of the defendants . . . was *the proximate cause* of the death of [the decedent], you must then go on to consider the issue of damages. Please remember that if you find that the plaintiff has failed to prove that the defendants were negligent or that their negligence was *a proximate cause* of the death of [the decedent], you do not need to reach the issue of damages." (Emphasis added.)

Moreover, on July 15, 2013, before closing arguments, the court stated that it provided copies of the verdict form and interrogatories to counsel.[7] Counsel for both parties were told by the court that the interrogatories were the same as those read aloud at the Friday, July 12, 2013 charge conference. The final interrogatories given to the jury, however, differed from the ones discussed at the charge conference because "the proximate cause" was substituted for "a proximate cause" in the second interrogatory. This change, by its use of the definite article "the" rather than the indefinite arti-

cle "a," effectively required the jury to answer whether the defendant's breach of the standard of care was *the proximate cause* of the decedent's death, meaning sole or only cause of the decedent's death, rather than *a proximate cause*, meaning one of the several contributing causes. The jury's responses to the interrogatories reveal that it found the defendants to have breached the standard of care, but did not find that the defendants were the sole proximate cause of the decedent's death.

Next, we set forth the appropriate standard of review. "The power of the trial court to submit proper interrogatories to the jury, to be answered when returning [its] verdict, does not depend upon the consent of the parties or the authority of statute law. In the absence of any mandatory enactment, it is within the reasonable discretion of the presiding judge to require or to refuse to require the jury to answer pertinent interrogatories, as the proper administration of justice may require. . . . The trial court has broad discretion to regulate the manner in which interrogatories are presented to the jury, as well as their form and content. . . . Moreover, [i]n order to establish reversible error, the defendant must prove both an abuse of discretion and a harm that resulted from such abuse." (Internal quotation marks omitted.) *Sola* v. *Wal-Mart Stores, Inc.*, 152 Conn. App. 732, 750, 100 A.3d 864, cert. denied, 314 Conn. 941, 103 A.3d 165 (2014).

"Our standard of review concerning claims of instructional error is well settled. [J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict . . . . The trial court must adapt its instructions to the issues raised in order to give the [jurors] reasonable guidance in reaching a verdict and not mislead them." (Internal quotation marks omitted.) *Stratek Plastic Ltd.* v. *Ibar*, 145 Conn. App. 414, 417, 74 A.3d 577, cert. denied, 310 Conn. 937, 79 A.3d 890 (2013).

In *Barksdale* v. *Harris*, 30 Conn. App. 754, 622 A.2d 597, cert. denied, 225 Conn. 927, 625 A.2d 825 (1993), the trial court, in a supplemental charge to the jury, misread the interrogatory as " 'the proximate cause' " rather than " 'a proximate cause.' " Additionally, in that case, the court improperly charged the jury when "with rare exception . . . [it] referred to 'the proximate cause' throughout the charge and the supplemental charge," rather than " 'a proximate cause.' " Id., 758. Due to the recurrence of the error, this court held that the jury instruction, as a whole, signified "more than a mere technicality." Id. In doing so, this court concluded that a new trial was required because "[t]he difference could have had a deleterious effect on the jurors' ability to reach a proper verdict. The jurors could have been misled into thinking that the defendants' negligence had

to be the sole proximate cause of the plaintiff's injuries in order to find the defendants liable." Id.

The facts of the present case warrant the same result. Here, due to a presumed typographical error, the jury filled out a legally incorrect interrogatory. In *Barksdale*, the trial court merely misread the interrogatory during the supplemental charge; there was a legally correct interrogatory before the jury, and yet this court remanded that case for a new trial. In the present case, the error was worse: the jury had before it a legally incorrect interrogatory. "The primary purpose of an interrogatory is to elicit a determination of material facts and to furnish the means of testing the correctness of the verdict rendered." *Willametz* v. *Guida-Seibert Dairy Co.*, 157 Conn. 295, 301, 254 A.2d 473 (1968). Here, because the interrogatory was legally incorrect, there is no way to test the correctness of the verdict. This problem was exacerbated by the jury charge in which the trial court alternated between references to "the" proximate cause and "a" proximate cause, which we discuss next.

The plaintiff claims that the court improperly charged the jury on the doctrine of causation as it applies to this case. Specifically, the plaintiff claims that the jury charge as to proximate cause, when read in conjunction with the erroneous jury interrogatory, gave the jury "the misleading impression that it had to find that [the defendants'] breach of the standard of care was the sole proximate cause of [the decedent's] death." We agree.

In the present case, we conclude that that the jury was misled by the charge. Reviewing the jury instructions as a whole, we are cognizant that there were only two instances in which the court said "the proximate cause" during the jury charge. The effect of those misstatements, however, was compounded by the fact that the interrogatory also misstated the legal standard as to proximate cause. Given the potential for confusion and uncertainty created by the court's use of conflicting terms, we are not convinced that the court gave the jury reasonable guidance in reaching its verdict.

The defendant relies on *Phelps* v. *Lankes*, 74 Conn. App. 597, 813 A.2d 100 (2003), to explain why the jury instruction was not improper. In *Phelps*, this court reviewed a single instance during the jury charge in which the trial court improperly charged on the doctrine of causation. Id., 600. This court in *Phelps* articulated how on two occasions following the improper instruction, the court instructed the jury properly, eventually coming to the determination that "[d]espite the challenged instruction, the court's charge as a whole was not improper." Id., 603. We are not persuaded by the defendants' argument, and believe that the present case is more akin to *Barksdale* than to *Phelps*.

Although in the present case, there were only two

instances in the charge to the jury that were improper, as we previously indicated, those errors were exacerbated by an interrogatory completed by the jury that also contained the improper standard for proximate cause. Unlike in *Phelps*, which involved only one instance of an improper instruction, the jury charge in the present case was likely to have had a deleterious effect, confusing the jury as to what the appropriate standard was for proximate cause. Further, unlike in *Barksdale*, where the jury had a legally correct interrogatory, in the present case it did not. On the basis of the compound nature of the errors involved in the present case, we conclude that the court committed reversible error because it is likely that the jury was misled.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

[1] For convenience, references in this opinion to the defendant in the singular are to Mark Blitzer and references to the defendants in the plural are to both Blitzer and Arrhythmia Center of Connecticut.

[2] The plaintiff also claims that the court abused its discretion by failing to set aside the verdict because it is contrary to applicable law and to the trial evidence. Because we reverse the judgment of the trial court on the plaintiff's other claims and remand for a new trial, we do not reach this additional claim.

[3] Tachycardia is defined as "[r]apid beating of the heart, conventionally applied to rates over 90 beats per minute." Stedman's Medical Dictionary (28th Ed. 2006) p. 1931. Ventricular tachycardia is "paroxysmal [tachycardia] originating in an ectopic focus in the ventricle." Id.

[4] The jury had evidence before it that beta-blockers suppress adrenaline and are a primary treatment for preventing occurrences of ventricular arrhythmias.

[5] The defendants argue that the plaintiff waived any claim of error with respect to the charge on causation in this appeal because the plaintiff's counsel explicitly agreed to the charge and the interrogatories before the verdict. We disagree. The court, after a lengthy charge conference, was asked by the defendants' counsel whether it was necessary to repeat exceptions to the charge. The court replied that the parties did not need to repeat any exceptions to the charge that were already stated.

Throughout the charge conference, both parties took numerous exceptions to the charge. In particular, there was a discussion between the parties in regards to proximate cause and multiple causes, and the court eventually indicated on the record that she was likely to remove the charge on multiple causes from the final charge to the jury. Moreover, the charge that was read aloud to the jury differed from the charge discussed during the charge conference as to proximate cause. The charge that was read to jury used the terms "the proximate cause" and "a proximate cause" interchangeably.

Although on July 15, 2013, the plaintiff's counsel did not object at the conclusion of the charge, after the court had stated "the proximate cause" on two occasions, that omission does not amount to a waiver of instructional error given that the plaintiff submitted a request to charge. Practice Book § 16-20 provides in relevant part: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. . . ." Nevertheless, "[i]t is well settled . . . that a party may preserve for appeal a claim that an instruction . . . was . . . defective either by: (1) submitting a written request to charge covering the matter; or (2) taking an exception to the charge as given. . . . Thus, the essence of the preservation requirement is that fair notice be given to the trial court of the party's view of the governing law and of any disagreement that the party may have had with the charge actually given." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *Lin* v. *National Railroad Passenger Corp.*, 277 Conn. 1, 13, 889 A.2d 798 (2006).

On July 8, 2013, the plaintiff submitted to the court a written request to

charge that relied in relevant part on the standard Connecticut Civil Jury Instructions, including the instructions regarding: (1) proximate cause, as set forth in instruction 3.1-3; (2) proximate cause—substantial factor, as set forth in instruction 3.1-4; and (3) proximate cause—multiple causes, as set forth in instruction 3.1-5. The standard civil jury instruction regarding proximate cause states: "Negligence is *a proximate cause* of an injury if it was a substantial factor in bringing the injury about." (Emphasis added.) Connecticut Civil Jury Instructions (4th Ed. 2008), instruction 3.1-3, available at http://www.jud.ct.gov/JI/civil/part3/3.1-3.htm (last visited May 1, 2015). Therefore, because the plaintiff submitted these requests to charge, this claim is properly preserved for review by this court.

[6] At the completion of the jury charge, neither party objected on the basis that the court interchangeably used the terms "a proximate cause" and "the proximate cause."

[7] Specifically, the court stated: "And I did give Attorney Douthat the verdict forms and the interrogatories. Did you see those? . . .

"Take a look at them, please. . . .

"[T]hose are the actual copies. It was what you all gave me and I showed you the interrogatories also on Friday [July 12, 2013]."

---------------------------------